# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3529

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Juan Orozco-Rodriguez, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: February 15, 2000

Filed: July 20, 2000

_____

Before RICHARD S. ARNOLD, HEANEY, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Juan Orozco-Rodriguez of three counts of aiding and abetting the distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (2). The district court[1] sentenced him to 63 months in prison. Orozco-Rodriguez appeals his conviction and sentence, arguing the district court improperly admitted evidence regarding prior uncharged drug sales and improperly refused to grant him a downward sentencing departure based on his health or family situation. We affirm.

_____

[1]The Honorable JIMM LARRY HENDREN, Chief Judge of the United States District Court for the Western District of Arkansas.

# I.  Evidence of Prior Drug Sales

Before Orozco-Rodriguez's trial, co-defendant Jerame Keller pleaded guilty and agreed to cooperate with the government.   At trial, Keller testified that, on three occasions in December 1997, he purchased methamphetamine from Orozco-Rodriguez. Keller was acting as a go-between for his friend, Jim Bob Ford, and a friend of Ford's, "Mike," who was in fact an undercover police officer.  For each transaction, Ford first contacted Keller, saying Mike wanted to buy methamphetamine.  Keller paged Orozco-Rodriguez and arranged a rendezvous.  Keller then obtained money from Mike, went to the rendezvous location, and exchanged the money for methamphetamine in Orozco-Rodriguez's car while Mike and Ford watched from a distance.

Prior to describing these three transactions, which are the offenses of conviction, Keller testified, over Orozco-Rodriguez's objection, that Orozco-Rodriguez had sold Keller methamphetamine between August and October 1997, when the two were co-workers, and that Keller had seen Orozco-Rodriguez selling it to other co-workers as well.  On appeal, Orozco-Rodriguez argues that this was irrelevant and unfairly prejudicial evidence of other crimes that should have been excluded under Rules 403 and 404(b) of the Federal Rules of Evidence.  We disagree.

Keller's preliminary testimony established a relationship between Keller and Orozco-Rodriguez that helped explain why Keller could act as a go-between for illegal drug transactions between Orozco-Rodriguez and an ultimate purchaser whom Orozco-Rodriguez did not know and was not willing to meet.  This was not Rule 404(b) evidence because it related to the background and circumstances of the charged crimes. "Rule 404(b) does not bar evidence that completes the story of the crime or explains the relationship of parties or the circumstances surrounding a particular event." United States v. Edwards, 159 F.3d 1117, 1129 (8th Cir. 1998), cert. denied, 120 S. Ct. 310 (1999); see United States v. Luna, 94 F.3d 1156, 1162 (8th Cir. 1996); United States v. Brown, 956 F.2d 782, 786-87 (8th Cir. 1992).  Nor was this brief background

testimony unfairly prejudicial under Rule 403, for it was followed by lengthy -- and overwhelmingly incriminating -- testimony by Keller and two police officers who either participated in or observed the three methamphetamine transactions. We conclude the district court did not abuse its considerable discretion in admitting this background testimony.

## II.  Downward Departure Issues

At sentencing, Orozco-Rodriguez sought a downward departure from the Guidelines' prescribed sentencing range on two grounds:  extraordinary physical impairment and extraordinary family situation.  See U.S.S.G. §§ 5H1.4, 5H1.6. Although these are permissible bases for departure, both are discouraged.  See generally Koon v. United States, 518 U.S. 81, 95-98 (1996).  The district court heard testimony by two doctors and Orozco-Rodriguez concerning his back and leg pain. Orozco-Rodriguez and his wife also testified as to their financial condition and the difficulties of raising school-age children in a rural location.  The court then concluded that Orozco-Rodriguez's health and family situation are not sufficiently extraordinary and declined to depart downward.

The governing statute, 18 U.S.C. § 3742(a) and (b), "allows a defendant to appeal an upward departure and the Government to appeal a downward one." Koon, 518 U.S. at 96.  Therefore, we have consistently held that the district court's decision *not* to depart downward is unreviewable so long as the court was aware of its authority to depart.  See United States v. Saelee, 123 F.3d 1024, 1025 (8th Cir. 1997); United States v. Evidente, 894 F.2d 1000, 1003-05 (8th Cir.), cert. denied, 495 U.S. 922 (1990).  Here, it is clear the district court knew of its authority to depart under § 5H1.4 or § 5H1.6.  Orozco-Rodriguez argues the court committed an error of law by employing an overly rigorous standard for "extraordinary physical impairment."  We rejected a similar argument in United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998):

The trial court found that Eagle had serious health problems, but specifically found "there is no evidence that the defendant's disability prevents him from being managed in prison." The district court's refusal to depart downward was an exercise of discretion.

As in <u>Eagle</u>, we conclude the district court's refusal to depart downward was an exercise of its sentencing discretion that is unreviewable on appeal.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.