# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1740

_____

Kaytina Harrison,                                *
                                                 *
              Appellee,                          *
                                                 *   Appeal from the United States
       v.                                        *   District Court for the Western
                                                 *   District of Missouri.
Purdy Brothers Trucking                          *
Company, Inc.; David Carey,                      *
                                                 *
              Appellants.                        *

_____

Submitted:  September 13, 2002

Filed:  December 3, 2002

_____

Before BYE, BEAM, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Purdy Brothers Trucking, Inc., and its driver, David Carey (collectively Purdy Brothers), appeal from the district court's[1] denial of their motion for a new trial following a $3 million verdict in favor of Kaytina Harrison for the wrongful death of her son, Ryan.  The case was tried to a jury on the issue of damages only.  Purdy

_____

[1]The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

Brothers contends the district court abused its discretion by admitting an autopsy report, Harrison's counsel made prejudicial comments during closing arguments, and the district court erred in awarding prejudgment interest. We affirm.

I

When Purdy Brothers admitted liability on the first morning of trial following voir dire, the parties agreed to a stipulated set of facts for the district court to read to the jury. The stipulation serves equally well for our purposes in setting forth the factual background of this case, so we repeat it here:

> This case is the result of a collision between an automobile and a tractor-trailer on June 30, 2000, in Columbia, Missouri, in which plaintiff Kaytina Harrison's 8 ½ year-old son, Ryan Thompson, was killed. Ms. Harrison has brought this claim against David Carey and Purdy Brothers Truckling [sic] Company for her son's wrongful death.
>
> Mr. Carey and Purdy Brothers have admitted they are liable for Ryan Thompson's death. You will be asked to determine whether Ms. Harrison is entitled to money damages for her son's death in accordance with instructions that I will read to you later and, if so, how much.
>
> So that you may have some understanding of the facts surrounding Ryan Thompson's death and the wreck that caused it, I am going to give you some information that may aid you in your deliberations.
>
> This wreck occurred at 6:45 a.m. on Friday, June 30, 2000. The day was clear and the road was dry at the time of the accident. Ryan Thompson was on his way home after spending the night with his father, Rob Thompson. Ryan was lying down in the back seat of Mr. Thompson's Chevrolet Malibu. Their car was stopped on the westbound ramp from I-70 at the Highway 63 connector. Their car was struck from behind by a tractor-trailer rig being driven by David Carey in the course and scope

of his employment with Purdy Brothers. Ryan Thompson died in the collision.

Mr. Carey was traveling to Columbia from St. Louis. When he approached the exit on which the accident occurred, he was going approximately 60-65 m.p.h. The speed limit on I-70 at that location is 60 m.p.h.

The defendants admit that David Carey was negligent in the operation of the Purdy Brothers truck in that he drove at an excessive speed for the conditions and that he caused or allowed the tractor trailer to collide with the car in which Ryan Thompson was a passenger, and that Mr. Carey's negligence caused Ryan Thompson's death.

None of the parties involved in the wreck were on drugs or under the influence of alcohol at the time of the collision.

After the accident, Kaytina Harrison hired counsel to pursue a claim on her behalf. On August 18, 2000, her counsel wrote to Purdy Brother's liability carrier, Empire Fire & Marine Insurance Company, offering to settle for $2,499,999. Counsel sent the offer by certified mail to trigger Missouri's prejudgment interest statute, which allows for an award of prejudgment interest "if a claimant has made a demand for payment or an offer of settlement of a claim, to the party, parties *or their representatives* and the amount of the judgment or order exceeds the demand for payment or offer of settlement [when the offer is] made in writing and sent by certified mail." Mo. Rev. Stat. § 408.040 (emphasis added). Under the terms of the policy, Purdy Brothers gave Empire authority to "investigate and settle any claim or 'suit' as we [Empire] consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements."

When the parties were unable to settle, Harrison brought suit and the case proceeded to trial. Because Purdy Brothers admitted liability, the trial focused on Ryan's personality and activities. A total of seven witnesses took the stand — Ryan's little league coach, his second grade teacher, his best friend's mother, both of his grandmothers and mother and stepfather — all testifying about Ryan's life and his relationship with his mother.

The district court excluded most evidence related to the accident, including all photos of Ryan's body, a video re-enactment of the accident, testimony from witnesses who were on the scene immediately following the accident, and the fact that Carey had pleaded guilty to felony manslaughter for causing the wreck. The district court also excluded all photos of the accident scene, with the exception of three which Purdy Brothers had stipulated were admissible — two aerial photos showing the intersection, and a single photo showing the accident scene itself. The accident scene photo showed the crumpled and severely-burned shell of the Thompson vehicle, which caught fire as a result of the collision. The jury already knew about the fire because during voir dire, before Purdy Brothers admitted liability, the district court told them "[t]here was a major accident. There was a fire and I guess I don't need to say much more about it."

Over Purdy Brothers's objection, the district court also admitted a two-page report of Ryan's autopsy. The report contained a brief description of the condition of the body:

> The head hair is burned away. The irides are burned away. The nose, ears and mouth are burned away. The neck, chest, back and abdomen are unremarkable except for the thermal injuries to the back and chest.
>
> There is significant thermal injury to the head and upper trunk, especially the back. There are open fractures of the skull and lacerations

to the brain.  There is skin slippage to the trunk and extremities due to the diesel fuel.

During closing argument, Purdy Brothers objected to three statements made by Harrison's counsel.  Because the district court had informed the jury during voir dire that the case would take all week to try, Harrison's counsel began his closing argument by explaining why it took just a day and a half:

> We came here to spend a week with you and we told you that in – at the beginning of the case, and you can see in all this stuff they've brought along, we came for a week.  And then Mr. Gotfredson told you in opening statement, he said we've come here today and said we are responsible for this tragedy, and that's true.  They did come Monday and say, while you were out in the hall, well, yeah, we're responsible.  We caused the death of Ryan Thompson.  And that's good that they did that.  But that doesn't make the loss to Kaytina Harrison any less.  The fact that the defendants in the case finally 'fessed up, that doesn't make . . .

Purdy Brothers then objected, and the district court immediately sustained the objection.  Harrison's counsel continued by explaining the context of his comments, with no objection from Purdy Brothers:

> That doesn't make Kaytina's loss any less.  So, why do the defendants then confess liability at the eleventh hour?  I don't know that.  I don't know that.  But they did and so we're here Tuesday at noon and the case is going to you instead of Thursday or Friday, so I guess that part is good.

Next, Purdy Brothers objected to a reference Harrison's counsel made to the speed at which Carey drove his truck on the off ramp:

> And, by the way, in Mr. Richmond's opening statement, he talks about something, well, never did Mr. Carey think that going 65 in a 60 mile per hour zone would end up like this.  But we all know that this wreck

didn't happen on the interstate where the speed limit is 60.  This wreck happened on the off ramp, at the stop sign.

Purdy Brothers objected on the grounds that "he's arguing evidence that's not in the case."  The district court overruled the objection.

Finally, Purdy Brothers objected when Harrison's counsel argued the defendants had not been "willing to do" justice:

> We need a fair and just closure for this tragedy, justice for the death of Ryan Thompson, the justice that is required by the Court's instruction No. 7 – Instruction No. 7 in your pamphlet – in your booklet that the judge gave you, you must award, not you can award if you want to, you must [award] Plaintiff Kaytina Harrison such sum as you believe will fairly and justly compensate her for the loss of her son.  That justice comes only from your verdict, from your decision, because these defendants have not been willing to do that.

Purdy Brothers requested a bench conference, and objected  on the grounds counsel had referred to pre-trial settlement discussions.  The court sustained the objection, and told the jury:

> I'm going to instruct you to disregard counsel's last statement.  What defendants were or were not willing to do before the start of the trial is really irrelevant to this stage.  What is relevant at this proceeding is the stipulation and the evidence you've received and anything concerning what anybody did or did not do that wasn't presented in this courtroom, that wasn't in the evidence in this case is irrelevant to the case and must not be considered by you.

Harrison's counsel ultimately suggested an award of $8.5 million.  Purdy Brothers suggested an award of $500,000 to $1 million.  The jury returned a verdict of $3 million.

Both parties filed post-trial motions. Harrison moved for prejudgment interest pursuant to Mo. Rev. Stat. § 408.040 because the verdict exceeded her August 18, 2000, settlement offer to Empire. Purdy Brothers opposed the motion, arguing Empire was not its "representative" within the meaning of the statute. The district court disagreed, and awarded prejudgment interest.

Purdy Brothers moved for a new trial arguing the district court abused its discretion by admitting the autopsy report, and that the closing arguments of Harrison's counsel were improper and resulted in a miscarriage of justice. The district court denied the motion, noting in part "the award of damages, although large, is not excessive in this case when considered against other cases of this nature and the circumstances."

II

"We review the denial of a motion for a new trial for a clear abuse of discretion." Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 495 (8th Cir. 2002). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000) (quoting McKnight v. Johnson Controls, 36 F.3d 1396, 1400 (8th Cir. 1994)). An allegedly erroneous evidentiary ruling does not warrant a new trial "unless the evidence was so prejudicial that a new trial would likely produce a different result." Bevan v. Honeywell, Inc., 118 F.3d 603, 612 (8th Cir. 1997). Similarly, when a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are "plainly unwarranted and clearly injurious" and "cause[] prejudice to the opposing party and unfairly influence[] a jury's verdict." Alholm v. Am. Steamship Co., 144 F.3d 1172, 1181 (8th Cir. 1998) (citations omitted).

Purdy Brothers contends admitting the autopsy report caused a miscarriage of justice because Ryan's post-mortem condition was irrelevant to the issue of damages.

See Mo. Rev. Stat. § 537.090 (limiting damages in a wrongful death action to the "reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death").  Purdy Brothers argues the reference to the post-mortem condition of Ryan's body was prejudicial and inflamed the jury.

It appears the district court admitted the report to give the jury some background information about the accident.  After Purdy Brothers conceded liability, the district court told counsel "that does severely limit what becomes relevant at trial," but added "I think the jury is entitled to some information concerning the circumstances of the action.  I don't think juries can make decisions as to loss of life in the abstract."  We believe the district court was within its discretion to provide the jury a limited amount of background information regarding the circumstances of the accident.  Cf. United States v. Orozco-Rodriguez, 220 F.3d 940, 942 (8th Cir. 2000) (allowing the admission of background information in a criminal case because it "completes the story . . . or explains the relationship of parties or the circumstances surrounding a particular event").  But the two paragraphs in the autopsy report describing Ryan's post-mortem condition were not relevant, even for background purposes.  The post-mortem condition of Ryan's body was not probative of any element of damage allowed by § 537.090, and the jury did not need to know that fact to understand how the accident happened.  Although that portion of the autopsy report should have been redacted, the district court's failure to do so did not result in a miscarriage of justice.

When the district court admitted the autopsy report, Purdy Brothers had already stipulated to the admission of one accident scene photo showing the charred vehicle.  After having seen the photo, the jury would not have been at all surprised, shocked or inflamed by the information contained in the autopsy report.  In addition, plaintiff's counsel did not emphasize that information, and instead focused his case

on his client's relationship with Ryan. Furthermore, the district court specifically instructed the jury that it "must not consider grief or bereavement suffered by reason of [Ryan's] death" when awarding damages. We presume the jury obeyed this instruction. See Loehr v. Walton, 242 F.3d 834, 836 (8th Cir. 2001); Ryan v. Bd. of Police Comm'rs, 96 F.3d 1076, 1083 n.1 (8th Cir. 1996). The admission of the autopsy report did not result in a miscarriage of justice, and the district court did not abuse its discretion by denying the motion for a new trial on that ground.

Purdy Brothers also contends opposing counsel's closing arguments were improper and unfairly influenced the jury's verdict. Harrison claims Purdy Brothers failed to preserve this issue for review, so we address that claim first. The record shows closing arguments finished right before lunch, and the district court submitted the case to the jury giving counsel "a half an hour to go get something to eat, then come on back and we'll make a record on any matters that we need to make a record on." When the jury reached a verdict faster than expected, the district court took the verdict before giving the parties an opportunity to make a record on outstanding matters. Purdy Brothers then moved for a mistrial as soon as the district court allowed. Harrison nevertheless argues Purdy Brothers waived the claim because the mistrial motion was untimely. We disagree for two reasons.

First, under the circumstances involved in this case, the motion for a mistrial was timely even though made after the verdict was announced. Cf. Reeves v. Teuscher, 881 F.2d 1495, 1498 (9th Cir. 1989) (holding a motion for a directed verdict timely even though made after the jury's verdict was announced, where district court interrupted defendants and told them to make motion after the verdict). Second, Purdy Brothers entered timely objections to the closing arguments in any event, and therefore preserved the issue even if it had made no motion for a mistrial. A party need not object to an offensive argument *and* move for a mistrial in order to preserve the right to bring a motion for a new trial. See Hofer v. Mack Trucks, Inc., 981 F.2d 377, 385 (8th Cir. 1993) (addressing motion for new trial on merits where

plaintiff objected to allegedly improper argument at trial but did not also bring a motion for mistrial); Griffin v. Hilke, 804 F.2d 1052, 1057 (8th Cir. 1987) (granting a motion for new trial based on improper closing arguments without indicating the objecting party also moved for a mistrial).

Although the timely objections preserved this issue for our review, we conclude Purdy Brothers is not entitled to relief. As to the first comment ("the defendants in the case finally 'fessed up"), the district court immediately sustained an objection. In addition, counsel's comments following the objection show he was simply trying to explain why the case took a day and a half to try rather than a week, and Purdy Brothers did not object to the follow-up comments.

As to the second comment ("this wreck didn't happen on the interstate where the speed limit is 60. This wreck happened on the off ramp, at the stop sign"), the district court properly overruled the objection. Counsel's statements were true, and based on the evidence. The wreck did not happen on the interstate, the speed limit on the interstate was 60, and the parties had stipulated "the car was stopped on the westbound ramp." To the extent counsel's statement implied the speed limit on the ramp was something less than 60 mph, we find no prejudice because Purdy Brothers had stipulated that Carey drove his truck "at an excessive speed for the conditions."

As to the third comment ("these defendants have not been willing to do [justice]"), the district court immediately gave a cautionary instruction to the jury to disregard the comment, and had previously advised the jury that arguments of counsel are not evidence. The district court's cautionary instructions cured any prejudice that might have been caused by the comment. See Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002). The district court did not abuse its discretion by denying the motion for a new trial because of improper closing arguments.

Finally, Purdy Brothers claims the district court erred by awarding prejudgment interest. It contends Empire was not its "representative" within the purview of Mo. Rev. Stat. § 408.040, and therefore the August 2000 settlement demand to Empire did not trigger the statute. Although the Missouri courts have twice implicitly recognized the validity of a demand letter sent to a defendant's liability insurer, see Brown v. Donham, 900 S.W.2d 630, 631 (Mo. 1995); Hurst v. Jenkins, 908 S.W.2d 783, 784 (Mo. Ct. App. 1995), they have never explicitly addressed whether an insurer is a party's "representative" under § 408.040, and so our task is to predict how the Missouri Supreme Court would decide the issue. See Cassello v. Allegiant Bank, 288 F.3d 339, 340 (8th Cir. 2002).

Purdy Brothers's argument is based upon a rule of statutory construction. The Missouri legislature enacted § 408.040 in the same bill as the collateral source rule, which refers to both a party's "insurer" and its authorized "representative." Mo. Rev. Stat. § 409.715.[2] Purdy Brothers argues the "[p]rovisions of the entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized." Hagely v. Bd. of Educ. of Webster Groves Sch. Dist., 841 S.W.2d 663, 667 (Mo. 1992). Purdy Brothers contends the difference in the two statutes shows that the Missouri legislature considers a party's "representative" to be distinct from a party's "insurer." We disagree. One would expect the collateral source rule to specifically refer to payments from a party's insurer. We doubt the Missouri legislature intended that reference to have any bearing whatsoever on a party's right to prejudgment interest.

---

[2]Section 409.715 provides in pertinent part that "[i]f prior to trial a defendant or his insurer or authorized representative, or any combination of them, pays all or any part of a plaintiff's special damages, the defendant may introduce evidence that some other person other than the plaintiff has paid those amounts."

We suspect the Missouri Supreme Court would recognize an insurer to be a party's "representative" under § 408.040. One of the obvious goals of the statute is to encourage settlements, even before a suit is filed. See Lester v. Sayles, 850 S.W.2d 858, 873 (Mo. 1993) (recognizing the statute is triggered by a demand made prior to filing suit). In many instances plaintiff's counsel initiates settlement discussions with a defendant's insurer prior to filing suit. If the statute were to exclude insurers from the term "representative," the primary goal of the statue would be frustrated, not furthered. We doubt the Missouri legislature intended such a result.

Furthermore, as is true in this case, parties often agree by contract to have their insurer act as their representative for settlement purposes. The Purdy Brothers policy provided that Empire "may investigate and settle any claim or 'suit' as we [Empire] consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." Thus, if the present case were before the Missouri Supreme Court, we believe the court would recognize Empire as Purdy Brothers's "representative."

Purdy Brothers argues Empire's contractual authority to settle was restricted by the policy's $1 million limits, however, and that Empire was not authorized to receive a settlement demand exceeding that amount. We disagree. The policy's coverage limits have no effect on Empire's authority to act as Purdy Brothers's representative for purposes of receiving a settlement offer, which is the only issue we must address under § 408.040. In other words, the issue is not whether Empire could agree to the settlement demand, but whether Empire was Purdy Brothers's representative for the purposes of having a settlement demand sent to them by certified mail. The policy did not limit Empire's authority to act as Purdy Brothers's representative for that purpose until "the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." Empire never exhausted its limits, and therefore was Purdy Brothers's "representative" when Harrison made her settlement offer.

-12-

We affirm the judgment of the district court in all respects.

BEAM, Circuit Judge, concurring and dissenting.

I reluctantly concur in the court's affirmance of the denial of the defendant's motion for a new trial, sought because of the district court's evidentiary error concerning the autopsy report, a mistake duly recognized by the court in its opinion. However, the district court's decision to award prejudment interest is clearly wrong and should be reversed. Accordingly, I respectfully dissent on this issue.

The district court and this court rely upon an expansive and incorrect reading of Missouri Revised Statute § 408.040.2 for authority to award prejudgment interest, in derogation of Missouri common law to the contrary. See Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 69 (Mo. 2000) (statutes displacing common law are to be strictly construed). However, of greater importance, section 408.040.2 is, whether liberally or narrowly applied, simply not applicable under the facts of this case. A brief recapitulation of the relevant circumstances is helpful.

The accident occurred on June 30, 2000. On August 18, 2000, Ms. Harrison's lawyer, Wally Bley, sent a demand letter/settlement offer to Bob Reynolds, an insurance adjustor with Empire Fire and Marine Insurance Company, Purdy Brothers' insurer. The demand was for $2,499,999 and coverage under the Empire policy was limited to $1,000,000. On November 3, 2000, Ms. Harrison commenced a wrongful death action against Purdy Brothers and driver David Carey in the Circuit Court of Boone County, Missouri. Purdy Brothers filed a notice of removal in the United States District Court for the Western District of Missouri on December 13, 2000.

The Bley letter of August 18, 2000, is the sole basis for the claim for prejudgment interest.

Section 408.040.2 provides, in pertinent part, as follows:

> *In tort actions*, if a claimant has made . . . an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment . . . exceeds the . . . offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made . . . . Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier.

Mo. Ann. Stat. § 408.040.2 (emphasis added). The court and the parties spend considerable time arguing over the statutory meaning and breadth of the word "representatives." However, they ignore a more fundamental problem. The offer of settlement, if the Bley letter can be properly construed as such, was not made *in a tort action*. Indeed, no tort action, as defined by Missouri law, existed when Mr. Bley sent his demand of August 18, 2000. The tort action was commenced on November 3, 2000, almost three months later.

In defining the meaning of the phrase *a tort action*, Missouri has adopted a "usual and ordinary sense" of the word "action." North v. Hawkinson, 324 S.W.2d 733, 744 (Mo. 1959). "'Generally, an action is such a judicial proceeding as, conducted to termination, results in a judgment.'" Id. (quoting State ex rel. Silverman v. Kirkwood, 239 S.W.2d 332, 336 (Mo. 1951)). It is also clear that an "*action* is commenced by filing a petition with the court." Ostermueller v. Potter, 868 S.W.2d 110, 111 (Mo. 1993) (emphasis added). When Bley mailed his letter, there was no *tort action*. Accordingly, I would find that section 408.040.2 is inapplicable.

I recognize that there is obiter dictum in Lester v. Sayles, 850 S.W.2d 858 (Mo. 1993) (en banc) that counsels a contrary conclusion. In Lester, a case ultimately remanded for a new trial, defendant Sayles asserted a due process void-for-vagueness defense to section 408.040.2, claiming it was ambiguous as to whether the demand

-14-

must come before or after the filing of a lawsuit. In response, the Missouri Supreme Court held that the words, "a demand for payment of a claim or an offer of settlement," placed no limits on when a plaintiff may make this offer. Id. at 873. However, in its discussion, the court totally ignored the "[i]n a tort action" language that commences and, time wise, frames the section. Further, under the facts of Lester, "the offer of settlement was made approximately one year *after* the filing of the lawsuit." Id. (emphasis added), not three months before. So, on the facts, the before-after issue was moot.

Further, the demand was sent to an insurance representative who had, because of a deficiency in insurance coverage, no duty, obligation or means to affirmatively respond to the demand. So, assuming for purposes of discussion, that the pre-action demand or claim could somehow be construed to have been made *in a tort action*, an insurance carrier with insufficient coverage to meet the "offer of settlement" cannot be construed to be a representative under the intent and purposes of section 408.040.2.

Missouri, somewhat uniquely in the present day, apparently does not assemble a history of legislative intent. Nonetheless, Purdy Brothers cites various Missouri statutes that recognize a distinction between a person's "insurer" and its "representative." See, e.g., Mo. Ann. Stat. §§ 379.820.1 and 490.715.2. Purdy Brothers also points out that section 408.040.2 was enacted as part of House Bill 700 in 1987. See 1987 Mo. Laws 792, 807-08. As part of the same bill, the Missouri legislature enacted another provision that refers explicitly to a party's insurer and to its authorized representative. See § 490.715.2. Thus, Purdy Brothers argues, construing "representative" to include a party's insurer under section 408.040.2 is inconsistent with the legislative act as a whole. See Hagely v. Bd. of Educ. of Webster Groves Sch. Dist., 841 S.W.2d 663, 667 (Mo. 1992) ("Provisions of the entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized."). Finally, Purdy Brothers accurately points to

-15-

instances when the Missouri legislature has distinguished between "agents" and "representatives" and argues that, if the legislature wanted to permit service of settlement demands on a party's "agent," it knew how to do so. See, e.g., Mo. Ann. Stat. §§ 376.500, 376.510.

Missouri law does not recognize an insurer's duty to defend (or presumably to settle) beyond the applicable policy limits. See Millers Mut. Ins. Ass'n v. Shell Oil Co., 959 S.W.2d 864, 867 (Mo. App. 1997). But here, the court would ignore the policy limits of $1,000,000, and would ignore this limitation in duty, but would impose prejudgment interest, reciting the supposition that Empire should have tendered its coverage limits into the face of the larger demand before it could shed the mantle of "representative" under section 408.040.2. This construction is totally at odds with the plain language and clear intent of the prejudgment interest statute. The legislation is obviously designed to penalize a party with assets or insurance coverage sufficient to settle a claim asserted in a tort action, but who willfully refuses to do so. The penalty is the imposition of prejudgment interest. Indeed, to activate the benefits of section 408.040.2, Ms. Harris and her counsel had a duty to make an offer of settlement directly to Purdy Brothers or Purdy Brothers' representative *in the tort action she filed.* This was not done.

Accordingly, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.