# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-3286

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| | * | |
| v. | * | |
| | * | |
| Javier Garcia-Hernandez, also known | * | Appeal from the United States |
| as Alberto Perez, also known as Juan | * | District Court for the |
| Manuel Aranada, Jr., also known as | * | District of Nebraska. |
| Carlos Alcozer, also known as Javier | * | |
| Hernandez, also known as Alberto | * | |
| Aranda, also known as Juan Manuel | * | |
| Aranda, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 18, 2012
Filed: June 26, 2012

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Javier Garcia-Hernandez was found guilty by a jury of conspiring to distribute and possess with intent to distribute 500 grams or more of methamphetamine in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1), 846. The district court[1] sentenced him to life imprisonment. He appeals his conviction, arguing that evidence seized during a search of his home should have been suppressed, that certain testimony should have been excluded at trial, and that there was insufficient evidence to sustain the conviction. We affirm.

I.

Police in Lincoln, Nebraska started investigating a suspected methamphetamine conspiracy in early 2009. Over the next year, they conducted controlled buys of methamphetamine from persons associated with the conspiracy, conducted physical and video surveillance on a number of residences inhabited by suspected drug dealers, and in May 2010 searched a number of residences associated with the drug operation including that of Garcia-Hernandez. The searches uncovered large amounts of methamphetamine and other evidence of drug dealing. While no drugs were found at Garcia-Hernandez's residence, police found several documents pertaining to Delfino Rodriguez, who pled guilty to methamphetamine conspiracy and testified at Garcia-Hernandez's trial.

Garcia-Hernandez was charged in a one count indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine between January 2009 and May 2010. See 21 U.S.C. §§ 841(a)(1), (b)(1), 846. Prior to trial he moved to suppress the evidence obtained during the search of his home, arguing that the warrant was not supported by probable cause. The warrant application had been accompanied by a 54 page affidavit, which was signed by a law enforcement officer involved in the investigation and which summarized information gathered by the

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

police over the course of many months. The district court denied the motion, adopting the magistrate judge's recommendation.

The case proceeded to a five day trial at which the government called 17 witnesses and introduced several hundred exhibits to demonstrate Garcia-Hernandez's involvement in the methamphetamine conspiracy. A number of witnesses who had pled guilty to conspiracy charges testified pursuant to their plea agreements and linked Garcia-Hernandez to the conspiracy. They reported that he had sold large amounts of methamphetamine and coordinated drug transactions among others involved in the distribution scheme. Their testimony established that he used the alias "Alberto Perez" and was often called "Al."

J. Nicholas Cramer was one of the witnesses who had pled guilty to conspiracy charges. Cramer testified that he would contact Garcia-Hernandez when he wanted methamphetamine. Garcia-Hernandez would set up drug deals for him or sell him the drugs directly from his own home in half pound or one pound quantities. Garcia-Hernandez also acted as a translator for Cramer during drug transactions with Spanish speakers. Cramer testified that he bought a PT Cruiser from a coworker which had a hidden compartment in which he would place money. Someone under the direction of Garcia-Hernandez would then pick up the money and replace it with drugs. When Cramer was arrested in the fall of 2009, he had his wife pay Garcia-Hernandez for drug debts with a large amount of money and several cars. Cramer stated that he typically sold to a buyer in South Dakota. That buyer testified that he knew Cramer had a source in Nebraska named Al.

Delfino Rodriguez, who had also entered a guilty plea to the methamphetamine conspiracy, testified that he had known Garcia-Hernandez since 1997 and that the two had been involved in drug dealing even before the current conspiracy. Garcia-Hernandez contacted Rodriguez in 2009 asking for drugs, and Rodriguez twice sold him half pound quantities of methamphetamine. Rodriguez stated that he had

arranged with Garcia-Hernandez to sell the PT Cruiser to Cramer and that it was later given to Garcia-Hernandez as payment for a drug debt owed by Cramer.

Evidence was also presented about the results of video and physical surveillance of several of the residences associated with the drug operation. Coolers were observed being taken in and out of homes including that of Garcia-Hernandez, and cars of known drug dealers were seen coming and going from his house. Testimony was heard about methamphetamine transactions being conducted by leaving the drug in a plastic cooler in the garage at a dealer's home. Police also testified about buying drugs from persons associated with the drug conspiracy during undercover controlled buys.

Police officers testified about the large quantities of drugs they found during searches conducted at residences associated with the conspiracy. At an apartment rented by Rodriguez, police found a large amount of methamphetamine, a cooler, cash, and drug notes. In the garage they found a power washer with almost 500 grams of methamphetamine inside, plastic storage bins, and a cooler. In another garage rented by Rodriguez police discovered almost 500 grams of methamphetamine stored inside a car safe, along with cash, checkbooks belonging to Rodriguez, and a number of documents in the name of Alberto Perez. Rodriguez testified that the car, drugs, and money belonged to him and that he had been holding the documents for Garcia-Hernandez. A search of Garcia-Hernandez's residence did not uncover any drugs, but police found documents there belonging to Rodriguez.

The jury returned a guilty verdict, and Garcia-Hernandez moved for a new trial. The motion was denied, and he received a mandatory life sentence based on several prior felony drug convictions. See 21 U.S.C. §§ 841(b)(1), 851.

II.

Garcia-Hernandez appeals his conviction of the methamphetamine conspiracy. He argues that the evidence seized at his residence should have been suppressed, that Rodriguez's testimony about knowing him from prior drug dealing should not have been admitted, and that there was insufficient evidence of his guilt. We first address Garcia-Hernandez's challenge to the denial of his motion to suppress based on his assertion that the search warrant was not supported by probable cause.

We review the district court's factual findings supporting the denial of the motion to suppress for clear error and its legal determinations de novo. United States v. Porchay, 651 F.3d 930, 940 (8th Cir. 2011). Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In reviewing a judicial determination of probable cause, we will affirm if the "judicial officer that authorized the search had a 'substantial basis for concluding that probable cause existed,'" and we accord "substantial deference" to the judicial officer's finding. United States v. Buchanan, 574 F.3d 554, 561 (8th Cir. 2009) (citations omitted).

Garcia-Hernandez argues that the warrant application did not establish a sufficient nexus between the criminal activity and his residence to support a finding of probable cause. The affidavit accompanying the warrant application stated that vehicles belonging to Garcia-Hernandez were seen coming and going from residences associated with drug distribution, and cars of known drug dealers were seen coming and going from Garcia-Hernandez's house. On multiple occasions video surveillance showed people carrying coolers into and out of Garcia-Hernandez's house and in vehicles registered to known drug dealers. The affidavit indicated that police had learned that coolers were often used to complete methamphetamine transactions. Cell phone records showed that during a period of less than one year more than 1,000 calls were made between numbers belonging to Garcia-Hernandez and numbers of known

drug dealers. A confidential informant said that he had purchased methamphetamine at Garcia-Hernandez's residence on several occasions. Thus, the application showed there was more than a "fair probability that law enforcement officers would discover further evidence of illegal drug activity" at appellant's home. See United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002).

Another argument related to the warrant is also raised. Garcia-Hernandez contends that the information provided in the supporting affidavit was stale and could not be relied on to support a finding of probable cause. While the confidential informant's statements described drug transactions at Garcia-Hernandez's home which had taken place a number of months before the warrant application was made, surveillance in the weeks leading up to the warrant's issuance showed continuing activity at the residence which was consistent with the informant's statements. Because the affidavit "describes a continuing pattern of behavior," and the older information corroborated more current reports linking the address to illegal activity, the affidavit was not stale "when taken as a whole." United States v. Palega, 556 F.3d 709, 715 (8th Cir. 2009). We conclude that the warrant was supported by probable cause, and the district court did not err in denying Garcia-Hernandez's motion to suppress.

We next consider Garcia-Hernandez's challenge to Rodriguez's testimony that the two men knew each other from drug transactions occurring before the 2009 conspiracy. After the government indicated that it planned to offer this testimony, defense counsel moved in limine to exclude it as improper evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b) and unfairly prejudicial under Rule 403. The district court overruled the objection in part, stating that the testimony could be offered to show how the two men knew each other and why they would trust each other. The court also restricted Rodriguez from testifying about the details of the prior conduct. Subsequently the prosecutor asked the following question, "And sometime before 2009 did you have some drug dealings with [Garcia-Hernandez]?"

Rodriguez responded "Yes." The court immediately gave a limiting instruction to the jury that the testimony not be considered "to prove that the defendant is guilty of the crimes charged in this case but for the limited purpose of helping you understand how it is this witness claims to know the defendant."

We review the district court's evidentiary ruling for an abuse of discretion. See United States v. Ellison, 616 F.3d 829, 832 (8th Cir. 2010). Rule 404(b)[2] directs that while evidence of "other crimes, wrongs, or acts" is inadmissible to "prove the character of a person in order to show action in conformity therewith," it may be admitted for other purposes including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

The district court did not abuse its discretion in allowing this brief testimony. While Garcia-Hernandez argues that the testimony was offered to prove his identity, the district court allowed it for the limited purpose of "helping [the jury] understand how it is [Rodriguez] claims to know the defendant." It was offered to "complete[] the story" and explain why Garcia-Hernandez contacted Rodriguez in 2009 looking for drugs. See United States v. Orozco-Rodriguez, 220 F.3d 940, 942 (8th Cir. 2000) (citation omitted). As such, it was not 404(b) evidence because it "related to the background and circumstances of the charged crimes." Id.; see United States v. Rock, 282 F.3d 548, 551 (8th Cir. 2002). Nor was Rodriguez's brief statement unfairly prejudicial under Rule 403 given the substantial evidence establishing Garcia-Hernandez's involvement in the conspiracy and the fact that the court immediately gave a limiting instruction. See Orozco-Rodriguez, 220 F.3d at 942.

---

[2]We quote the version of the Federal Rules of Evidence which was in effect at the time of Garcia-Hernandez's trial in June 2011, prior to the publication of a new version of the Rules in December 2011. See United States v. Jean-Guerrier, 666 F.3d 1087, 1091 n.2 (8th Cir. 2012).

Lastly, we examine Garcia-Hernandez's challenge to the sufficiency of the evidence. We review de novo the sufficiency of the evidence supporting the defendant's conviction, "viewing the evidence and all reasonable inferences therefrom in the light most favorable to the verdict." United States v. Manes, 603 F.3d 451, 457 (8th Cir. 2010). To prove a conspiracy the government must establish that (1) a conspiracy to distribute and possess with intent to distribute methamphetamine existed; (2) Garcia-Hernandez knew of the conspiracy; and (3) he intentionally joined it. See United States v. Zierke, 618 F.3d 755, 760 (8th Cir. 2010). A jury may "draw reasonable inferences from the evidence presented as to the defendant's state of mind when he did or said the things represented in the evidence." United States v. Crippen, 627 F.3d 1056, 1065 (8th Cir. 2010).

Garcia-Hernandez does not dispute that there was a conspiracy to distribute methamphetamine but contends that the government did not prove that he knew of the conspiracy or intentionally joined it. He notes that no drugs were found at his home, nor was there evidence that he participated in any of the controlled buys. He also contends that the testimony by Cramer and Rodriguez implicating him should not be credited because those individuals were motivated by plea agreements conditioned on their testimony.

The evidence was sufficient for a reasonable jury to infer that Garcia-Hernandez knew of the conspiracy and intentionally joined it. Surveillance revealed vehicles of known drug dealers coming and going from his home and transporting coolers in and out of the home. Cars belonging to Garcia-Hernandez were observed at the homes of dealers, and in his house documents were found belonging to Rodriguez. Searches of other homes where large quantities of drugs were found also uncovered evidence linking Garcia-Hernandez to the drug distribution network. Several witnesses testified that he bought and sold large quantities of methamphetamine, helped others conduct drug deals, and arranged that a car with a special drug compartment be sold by one associate to another. While Garcia-

Hernandez urges that this testimony is unreliable, "[t]he jury's credibility determinations are virtually unreviewable on appeal." <u>United States v. Aldridge</u>, 664 F.3d 705, 715 (8th Cir. 2011). Upon careful review of the trial record, we conclude that there was sufficient evidence to sustain the conspiracy conviction. <u>See</u> <u>id</u>.

## III.

Accordingly, the judgment of the district court is affirmed.

_____