# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-1788

———————————————

United States of America

*Plaintiff - Appellee*

v.

Roberto Carlos Ortiz-Cervantes

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Nebraska - Omaha

——————————

Submitted: May 12, 2017
Filed: August 21, 2017

——————————

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

——————————

RILEY, Circuit Judge.

Roberto Carlos Ortiz-Cervantes appeals the denial of his motion to suppress evidence obtained as a result of the execution of a warrant to search his residence. After the district court[1] denied the motion to suppress, Ortiz-Cervantes pled guilty

———————————————

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, adopting the Report and Recommendation of the Honorable Thomas D.

and was convicted of possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1). We affirm, concluding probable cause supported the search warrant and the search was conducted in good faith, even though the magistrate judge issuing the search warrant was not properly cross-designated to issue warrants for property located outside of his district. See 28 U.S.C. § 1291 (appellate jurisdiction).

## I.    BACKGROUND

On May 13, 2014, a Drug Enforcement Administration (DEA) special agent, Chad Schmitt, filed an application and supporting affidavit for a search warrant before a magistrate judge in the Northern District of Iowa (NDIa). The property to be searched was a single-family residence located across the Missouri River in South Sioux City, Nebraska.

The affidavit detailed ten controlled buys of methamphetamine from Victor Gonzalez between September 16, 2013, and May 13, 2014. Phone records of calls and text messages before the controlled buys linked Gonzalez to Jose W. Orellana. Orellana was in contact with Ortiz-Cervantes before three of the ten controlled buys, indicating to DEA agents Ortiz-Cervantes supplied Orellana with methamphetamine, and Orellana, in turn, supplied Gonzalez.

The affidavit also stated Ortiz-Cervantes lived at 3308 Santa Rita Court in South Sioux City, Nebraska. Ortiz-Cervantes shared the residence with his sister and her family, including her husband, Orellana's brother. Orellana visited the 3308 Santa Rita Court residence shortly before the controlled buys on October 17, 2013, and May 13, 2014.

Thalken, United States Magistrate Judge for the District of Nebraska.

Agents conducted a proffer interview on November 13, 2013, with Jovany Bautista. Bautista stated he had purchased methamphetamine from "Roberto" in early 2013 and identified a photograph of Ortiz-Cervantes as Roberto. Bautista also identified a picture of the 3308 Santa Rita Court residence as one of the places he met Roberto to purchase methamphetamine and told agents that Roberto lived in the basement of the residence while his sister and her family lived upstairs.[2]

The NDIa magistrate judge approved the application and issued a search warrant for the 3308 Santa Rita Court residence in South Sioux City, Nebraska. Officers executed the search warrant and found Ortiz-Cervantes in the basement along with more than 500 grams of methamphetamine. Ortiz-Cervantes was subsequently indicted in the District of Nebraska on one count of possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

Before the district court and a magistrate judge in the District of Nebraska, Ortiz-Cervantes moved to suppress the evidence obtained as a result of the search of the 3308 Santa Rita Court residence. Ortiz-Cervantes argued the NDIa magistrate judge did not have the authority to issue warrants for searches of property located in the District of Nebraska, and the affidavit did not include sufficient probable cause.

---

[2]At the later suppression hearing, Agent Schmitt testified they had conducted an earlier proffer interview with Bautista on September 19, 2013. At this interview, Bautista claimed he was not sure who lived at 3308 Santa Rita Court, but thought the person's name was Francisco or Ramone. Bautista also told agents "he believed that there was someone cooking in the area," and gave a name other than Ortiz-Cervantes, but Agent Schmitt clarified this statement was in reference to a cook at a Mexican restaurant, not a cook of methamphetamine. Agent Schmitt did not include this proffer interview in the affidavit.

The motion to suppress was denied, and Ortiz-Cervantes conditionally pled guilty, reserving the right to appeal the denial of his motion to suppress.

## II.    DISCUSSION

Ortiz-Cervantes challenges the search warrant on two grounds. First, Ortiz-Cervantes claims there was insufficient probable cause to support the warrant. Second, he asserts the search warrant was invalid because the NDIa magistrate judge was not authorized to issue warrants outside of his jurisdiction. "On appeal from the denial of a motion to suppress, we review the district court's historical factual findings for clear error and its conclusions of law on the probable cause issue de novo." United States v. Jeanetta, 533 F.3d 651, 654 (8th Cir. 2008).

### A.    Probable Cause

Probable cause to issue a search warrant "exists, if under the totality of the circumstances, a showing of facts can be made 'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" United States v. Underwood, 364 F.3d 956, 963 (8th Cir. 2004) (quoting United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002)), vacated on other grounds sub nom Carpenter v. United States, 543 U.S. 1108 (2005) (mem.). The affidavit in support of the search warrant application here detailed ten controlled buys of methamphetamine; back-and-forth communications among Gonzalez, Orellana, and Ortiz-Cervantes, a resident of 3308 Santa Rita Court; visits to 3308 Santa Rita Court before two controlled buys; and a proffer interview in which the interviewee stated Ortiz-Cervantes sold the interviewee methamphetamine at the 3308 Santa Rita Court residence.

Ortiz-Cervantes argues the information connecting him and the residence to the conspiracy to sell methamphetamine was stale. "There is no bright-line test for determining when information in a warrant is stale." United States v. Pruneda, 518 F.3d 597, 604 (8th Cir. 2008). "A warrant becomes stale if the information supporting the warrant is not 'sufficiently close in time to the issuance of the warrant

and the subsequent search conducted so that probable cause can be said to exist as of the time of the search.'" United States v. Brewer, 588 F.3d 1165, 1173 (8th Cir. 2009) (quoting United States v. Palega, 556 F.3d 709, 715 (8th Cir. 2009)).

The first controlled buy that connected Ortiz-Cervantes to the conspiracy occurred on September 24, 2013—almost eight months before the search warrant was issued and the search was conducted—and the proffer interview in November 2013 identified Ortiz-Cervantes as selling methamphetamine more than a year before the search. However, just before the tenth and final controlled buy—which occurred the same day agents applied for and executed the search warrant—Orellana stopped at the 3308 Santa Rita Court residence on his way to Gonzalez's residence, immediately before Gonzalez met the undercover officer.

"'In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [do] not necessarily make the information stale,'" Jeanetta, 533 F.3d at 655 (quoting United States v. Ortiz, 143 F.3d 728, 732-33 (2d Cir. 1998)), and a "lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated," United States v. Lemon, 590 F.3d 612, 614 (8th Cir. 2010) (quoting United States v. Horn, 187 F.3d 781, 786 (8th Cir. 1999)). Though drugs "'can be easily concealed and moved about,'" United States v. Button, 653 F.2d 319, 325 (8th Cir. 1981) (quoting Ashley v. State, 241 N.E.2d 264, 269 (Ind. 1968)), the facts here demonstrate "a continuing pattern of behavior" sufficient to establish probable cause even with months-old information, Palega, 556 F.3d at 715. A series of controlled buys spanning from months to hours before the application for a search warrant supported the agents' inference that Gonzalez, Orellana, and Ortiz-Cervantes had an ongoing conspiracy to sell methamphetamine and at least some transactions occurred at the 3308 Santa Rita Court residence. See, e.g., United States v. Colbert, 828 F.3d 718, 727 (8th Cir. 2016) (reasoning information obtained several months before the application for a search warrant was

not stale where there was evidence of an ongoing criminal enterprise as recently as three weeks before the warrant application).

The evidence tying 3308 Santa Rita Court to the conspiracy was not the strongest—communications with Ortiz-Cervantes before some controlled buys, but not all of them, visits to the residence Ortiz-Cervantes shared with Orellana's brother's family, and a statement Ortiz-Cervantes sold methamphetamine from the residence more than a year before the search—but was sufficient to create "a fair probability that contraband or evidence of a crime [would] be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[W]e accord 'substantial deference' to the judicial officer's finding," and the district court was correct in denying Ortiz-Cervantes's motion to suppress the evidence for lack of probable cause. United States v. Garcia-Hernandez, 682 F.3d 767, 771 (8th Cir. 2012) (quoting United States v. Buchanan, 574 F.3d 554, 561 (8th Cir. 2009)).

## B.  Cross-Designation of the Magistrate Judge

A magistrate judge "has authority to issue a warrant to search for and seize a person or property located within the district" in which the judge sits. Fed. R. Crim. P. 41(b)(1). The magistrate judge in this case who issued this warrant sat in the Northern District of Iowa, while the property that was the subject of the search warrant was located in the District of Nebraska, outside the NDIa magistrate judge's jurisdiction. But a magistrate judge can issue warrants in an "adjoining district" "[w]here the [Judicial] conference deems it desirable." 28 U.S.C. § 631(a).

Under § 631(a), a magistrate judge is cross-designated to serve in an adjoining district when the Judicial Conference of the United States[3] designates such a

---

[3]The Judicial Conference of the United States is a conference convened by the Chief Justice of the United States and includes the chief judge of each judicial circuit and the Court of International Trade, and a district judge from each judicial circuit. See 28 U.S.C. § 331. At the Conference, the judges "make a comprehensive survey

magistrate and the majority of the judges in each involved district concur.  See id.  "Such a designation shall be made by the concurrence of a majority of the judges of each of the district courts involved and shall specify the duties to be performed by the magistrate judge in the adjoining district or districts."  Id.  In a letter dated March 23, 2000, the Northern District of Iowa received notice that the Judicial Conference had voted to "[d]esignate the full-time magistrate judge position at Sioux City[, Iowa,] to serve in the adjoining District of Nebraska."  The magistrate judge who issued the search warrant was appointed in 2012 to fill the position the Judicial Conference had designated.  See U.S. Dist. Court for the N. Dist. of Iowa, Pub. Admin. Order No. 12-AO-0002-P (June 7, 2012).

Section 631(a) requires an additional step to cross-designate a magistrate judge properly—the designation must "be made by the concurrence of a majority of the judges of each of the district courts involved."  28 U.S.C. § 631(a).  No evidence of such a concurrence exists in the record.  The government urges us to find the required concurrence is evidenced by the administrative order appointing the magistrate judge.  While magistrate judges may be appointed "by the concurrence of a majority of all the judges of [the] district court" in which the judge will sit, id., the administrative order does not mention whether the NDIa judges concurred with the Judicial Conference's vote to cross-designate the position.  See U.S. Dist. Court for the N. Dist. of Iowa, Pub. Admin. Order No. 12-AO-0002-P (June 7, 2012).  The government also does not provide any evidence a majority of the district judges in the other affected district, the District of Nebraska, concurred with the cross-designation.

---

of the condition of business in the courts," "prepare plans for assignment of judges," and "submit suggestions and recommendations to the various courts to promote uniformity of management procedures and the expeditious conduct of court business," among other things.  Id.

The magistrate judge who issued the warrant in the present case plainly was not properly cross-designated under the requirements of § 631(a) and thus did not have the authority to issue a search warrant for property located in the District of Nebraska.

It greatly concerns us that a magistrate judge's cross-designation would not be executed as required by the federal statute, particularly because magistrate judges obtain their authority solely from the statute, as distinguished from Article III judges, who obtain their authority from Article III of the United States Constitution. See 28 U.S.C. § 636; cf. Gomez v. United States, 490 U.S. 858, 864-71 (1989) (discussing the authority granted to magistrate judges under the Federal Magistrates Act, 28 U.S.C. §§ 631, et seq.). As worrisome as this failure may be, it does not require suppression of the evidence against Ortiz-Cervantes.

A search warrant issued by an improperly cross-designated magistrate judge is a violation of Federal Rule of Criminal Procedure 41, but "[a] Rule 41 violation 'is not per se an unreasonable search and seizure in violation of the Fourth Amendment.'" United States v. Horton, Nos. 16-3976, 16-3982, 2017 WL 3122073, at *4 (8th Cir. July 24, 2017) (quoting United States v. Welch, 811 F.3d 275, 280 (8th Cir.), cert. denied, 136 S. Ct. 2476 (2016)). "Absent a constitutional infirmity, the exclusionary rule is applied only to violations of Federal Rule 41 that prejudice a defendant or show reckless disregard of proper procedure." United States v. Hyten, 5 F.3d 1154, 1157 (8th Cir. 1993). Ortiz-Cervantes does not claim to be prejudiced by the technical violation where—as discussed above—a magistrate judge followed normal procedures and found probable cause, and the search was executed within the bounds of the warrant. Yet when a magistrate judge issues a search warrant outside his jurisdiction, that search warrant is "invalid at its inception and therefore the constitutional equivalent of a warrantless search." Horton, 2017 WL 3122073, at *4 (finding a warrant issued by a judge in the Eastern District of Virginia for use of a Network Investigative Technique to collect information from computers located around the country void *ab initio*). Though the issuance of a warrant by an

improperly cross-designated magistrate may lead to a constitutional violation, the evidence does not necessarily need to be suppressed.

Evidence obtained due to a violation of the Fourth Amendment generally is inadmissible in a criminal trial under the exclusionary rule—a "judicially created rule" that is "'designed to safeguard Fourth Amendment rights generally through its deterrent effect'"—but the Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." Herring v. United States, 555 U.S. 135, 139-41 (2009) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).  Evidence obtained in violation of the Fourth Amendment is admissible if the officers executing an invalid search warrant did so in good faith. See United States v. Leon, 468 U.S. 897, 918-19 (1984).  "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007).

The good-faith exception does not apply where: (1) the supporting affidavit or testimony includes "a false statement made knowingly and intentionally or with reckless disregard for the truth" to mislead the issuing judge; (2) "the issuing judge 'wholly abandoned his judicial role' in issuing the warrant"; (3) "the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) "the warrant is 'so facially deficient' that no police officer could reasonably presume the warrant to be valid." Id. at 431 (emphasis omitted) (quoting Leon, 468 U.S. at 923).  Ortiz-Cervantes contends the Leon good-faith exception does not apply here because the issuing judge wholly abandoned his judicial role when he issued a search warrant for property located outside of his jurisdiction.

"[A] judge abandons [his or] her judicial role when [he or] she 'does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer.'" United States v. Long, 797 F.3d 558, 567 (8th Cir. 2015) (quoting United States v. Carpenter, 341 F.3d 666, 670 (8th Cir. 2003)). We have found an issuing judge wholly abandoned his role by failing to read the search warrant itself and failing to recognize the application was unsigned and the warrant did not identify the property to be searched. See United States v. Decker, 956 F.2d 773, 777 (8th Cir. 1992). But here, the issuing magistrate judge did not act "as a rubber stamp," Long, 797 F.3d at 567, and instead evaluated a 32-page affidavit—which included sufficient detail to identify the property and provide the required probable cause—and determined sufficient probable cause existed to issue the warrant. The improper cross-designation and resulting lack of authority to issue the search warrant does not mean, in this specific case, the magistrate judge wholly abandoned his judicial role.

"[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916. Agent Schmitt testified he applied for a search warrant before the NDIa magistrate judge "[b]ecause [the magistrate judge was] cross-designated," and Agent Schmitt, and other agents, had previously gone to that NDIa magistrate judge to obtain search warrants for property located in the District of Nebraska. The Judicial Conference of the United States had approved the cross-designation and notified the Northern District of Iowa. The magistrate judge and the agents requesting and executing the search warrant believed in good faith the magistrate judge was authorized to issue a search warrant for the 3308 Santa Rita Court property, even though the property was located in an adjoining district. The exclusionary rule does not exist to require or even encourage law enforcement officers to second guess the authority of judges to issue warrants.

We reiterate the requirements of 28 U.S.C. § 631(a) must be followed when cross-designating federal magistrate judges. Because the magistrate judge and the

-10-

officers involved in this warrant believed in good faith the magistrate judge was properly cross-designated, the evidence obtained as a result of the search was admissible against Ortiz-Cervantes.

## III.  CONCLUSION

We affirm.

_____