Theresa V. BROWN, Respondent,

v.

Kelley L. DONHAM, Appellant.

No. 77645.

Supreme Court of Missouri,
En Banc.

June 20, 1995.

Rehearing Denied July 25, 1995.

Karl Zobrist, Daryl J. Douglas, David B. Raymond, Kansas City, for appellant.

Andrew J. Gelbach, Warrensburg, for respondent.

PRICE, Judge.

This is an appeal from an award of prejudgment interest to Ms. Theresa Brown, pursuant to § 408.040.2, RSMo 1994.[1]  Because Ms. Brown failed to make a demand for payment of an amount of money that was "readily ascertainable", the circuit court's grant of prejudgment interest is reversed.

## I.

On February 6, 1992, at 3:40 a.m., Ms. Brown was a passenger in a car driven by Ms. Donham.  Ms. Brown was injured when Ms. Donham fell asleep at the wheel and the car left the highway and overturned, throwing all four occupants from the car.  A second passenger, Arlene Palomo, was killed in the accident and a third passenger, Cindy Palomo, was injured.

Ms. Donham's automobile insurance carrier was United Services Automobile Association (U.S.A.A.).  In a March 4, 1992, letter to U.S.A.A.'s adjuster, Ms. Brown's attorney wrote:

> "In accordance with the Missouri Tort Reform Act, this letter is a formal demand for payment of the policy limits of all insurance coverages that apply to this case, including liability and medical payments coverages.  This offer to settle for the policy limits is open for sixty (60) days from the date of this letter."

On March 11, 1992, the insurance adjuster wrote a letter to Ms. Brown's attorney.  This letter, in part, stated:

> As discuss [sic] with you by telephone, Kelly [sic] L. Donham's policy limits for bodily injury are 100,000/200,000.  This will also be outlined in the copy of the policy provided to you.  As you well know there are three (3) pending claims including your clients.  Our principal advises no single claim will be evaluated until all three (3) claims are received as to protect their insured as outlined in the policy provisions.

Ms. Brown's attorney replied on March 16, 1992.  He wrote, "Again I am reminding you of our settlement deadline as stated in my letter to you of March 4, 1992.  There can be no question that Theresa Brown's claim far exceeds the quoted limits of $100,000 per person under Miss Donham's coverage."

1. All statutes are RSMo 1994 unless indicated otherwise.

U.S.A.A. later settled the other two claims for a total of $105,000. U.S.A.A. offered to settle Ms. Brown's claim for $95,000. In a letter dated April 21, 1992, Ms. Brown's attorney acknowledged the proposed settlement. He also wrote:

> As I told you by telephone, I am not in a position to discuss this proposal with my client until I receive the insurance policies I have requested. At this point, I believe there is an issue over the medical payment coverage and whether the various insurance policies Miss Donham had with your company will stack under Missouri law. Please get the insurance policies to me immediately.

The record does not contain any additional information concerning subsequent settlement negotiations.

On October 8, 1993, Ms. Brown filed an amended petition for damages. The tenth count of the petition stated:

> On March 4, 1992, Plaintiff made a demand upon Defendant and her liability insurance company for payment of $100,000.00. Pursuant to Missouri Revised Statute 408.040 the offer was sent by certified mail and left open for 60 days. No settlement was reached during said 60 day period. Defendant offered $95,000.00 to settle this case which was not accepted by Plaintiff. Pursuant to Missouri law, and specifically, Missouri Revised Statute 408.040, Plaintiff, Theresa Brown, prays for prejudgment interest.

In her amended answer, Ms. Donham generally denied this count.

The jury awarded Ms. Brown a verdict in the amount of $450,000. After the verdict, Ms. Brown's attorney sent the circuit court a proposed judgment entry including an award for prejudgment interest. Ms. Donham's attorney submitted a letter to the trial court concerning prejudgment interest. On December 29, 1993, the trial judge and the attorney for each party held an off-the-record telephone conference concerning the issue of prejudgment interest. In addition, the issue of prejudgment interest was discussed on January 3, 1994. The court ultimately entered a judgment which included § 408.040.2 prejudgment interest. This Court has jurisdiction pursuant to Mo. Const. art. V, § 10.

## II.

The parties assert various procedural errors. Ms. Brown argues that Ms. Donham's objections to the award of prejudgment interest were not preserved for appellate review because they were not presented to the trial court. *See § 512.160.1; In the Interest of J.Y.*, 637 S.W.2d 670, 673 (Mo. banc 1982). On the other hand, Ms. Donham contends that the trial court could not award prejudgment interest because Ms. Brown failed to file a post-trial motion for interest and because the trial court failed to have a hearing to determine interest.

██ If a claim for prejudgment interest has been framed by the pleadings or tried by consent, the trial court can award prejudgment interest. *Rule 55.33(b); Chambers by Abel v. Rice*, 858 S.W.2d 230, 232 (Mo.App. 1993). An after-trial evidentiary hearing is unnecessary if the Court otherwise is fully advised in the matter and there are no genuine issues of material fact. *Cf. McHaffie v. Bunch*, 891 S.W.2d 822, 830 (Mo. banc 1995); *Gorman v. Cornwell Quality Tools*, 752 S.W.2d 844, 847 (Mo.App.1988).

██ In this case, Ms. Brown filed an amended petition claiming prejudgment interest, which was answered by Ms. Donham with a general denial. After the verdict, both parties corresponded with the trial court about prejudgment interest, and the court held two conferences on the issue. While the parties argue different interpretations of the facts presented, neither has shown that any genuine issue of material fact existed or that the court was unaware of their general position. A formal evidentiary hearing was unnecessary. The issue of prejudgment interest was properly presented to the trial court and adequately preserved for appeal.

## III.

### A.

██ Section 408.040.2 allows prejudgment interest in a tort action when a claim-

ant has made a demand for payment and the amount of the judgment exceeds the claimant's demand for payment.[2] This provision serves two public policies. *Larabee v. Washington,* 793 S.W.2d 357, 360 (Mo.App.1990). First, it compensates claimants for the true cost of money damages they have incurred due to the delay of litigation. *Id.* Second, where liability and damages are fairly certain, it promotes settlement and deters unfair benefit from the delay of litigation. *Id.*

The demand required under § 408.040.2 must be definite in its terms. It is analogous to an offer in contract. It is well settled law that to have a contract, there must be a definite offer and an acceptance. *Cottonseed Delinting Corp. v. Roberts Brothers, Inc.,* 218 S.W.2d 592, 594 (Mo.1949); *Thacker v. Massman Const. Co.,* 247 S.W.2d 623, 629 (1952). "'An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.'" *Restatement, Contracts,* Vol. 1, sec. 32 quoted in *Brown v. Childers,* 254 S.W.2d 275, 280 (Mo. App.1953).

Likewise, for a demand to be sufficiently definite under § 408.040.2, the amount due must be "readily ascertainable". *Parker v. National Foundation Life Insurance Co.,* 805 S.W.2d 195, 197 (Mo.App.1991). *See also Komosa v. Monsanto Chemical Co.,* 317 S.W.2d 396, 400 (Mo. banc 1958). While the demand need not always be expressed in dollars and cents, it must nonetheless be capable of ascertainment in a certain dollars and cents amount. In this case, Ms. Brown's demand did not meet this standard.

**B.**

The March 4, 1992, demand letter from Ms. Brown's attorney stated, "this let-ter is a formal demand for *payment of the policy limits of all insurance coverages* that apply to this case, including liability and medical payments coverages." (emphasis added). In most cases a demand for "policy limits" might meet the "readily ascertainable" standard. *See Gibson v. Musil,* 844 F.Supp. 1579, 1583 (W.D.Mo.1994). Here, the demand did not meet the "readily ascertainable" standard for two reasons. First, two different policy limits were applicable. And, second, plaintiff raised disputed issues of medical payment coverage and the stacking of other policies.

Here, the "policy limits" of Ms. Donham's insurance, as they applied to Ms. Brown's claim, did not indicate a fixed and definite amount. The "per person" limit of the policy at issue was $100,000 and the "per occurrence" limit was $200,000. Had Ms. Brown been the only claimant, or one of only two claimants, the demand for settlement of "policy limits" could have been construed as a demand for $100,000. Unfortunately, three persons made claims against the policy. With three claimants, it was obvious that the $200,000 per occurrence limit would come into play. The limits available to Ms. Brown were no longer a certain $100,000, but an amount between $0 and $100,000, depending upon what was paid to the other claimants.[3]

As the facts developed, $105,000 of the $200,000 per occurrence limit was paid to Cindy and Arlene Palomo. Ms. Brown makes no allegation that these settlements were made in bad faith or would not reduce the amount of the per occurrence limit available to her. *See* Couch on Insurance 2d (Rev ed) § 56:6; V.H. Cooper, Annotation, *Basis and Manner of Distribution Among Multiple Claimants of Proceeds of Liability Insur-*

---

**2.** Section 408.040.2 in its entirety states:

In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier. Nothing contained herein shall limit the right of a claimant, in actions other than tort actions, to recover prejudgment interest as otherwise provided by law or contract.

**3.** It has been argued that a policy limits demand should be sufficient because the insurance company knows its own limits. In situations like this where the policy limits themselves are at issue, such an argument simply does not apply.

*ance Policy Inadequate to Pay All Claims in Full*, 70 A.L.R.2d 416 § 5 (1960). Accordingly, the actual policy limits available to Ms. Brown were $95,000. This resulted in an ambiguity in Ms. Brown's demand. Was she requesting the $100,000 per person limit that otherwise would have been available to her or the $95,000 portion of the per occurrence limit that was actually available?

Moreover, Ms. Brown's "policy limits" demand was further complicated by her reference to "all insurance coverages that apply". The ambiguity of this language was heightened by her attorney's subsequent letter of April 21, 1992, that stated:

> As I told you by telephone, I am not in a position to discuss this proposal [defendant's offer of $95,000] with my client until I receive the insurance policies I have requested. At this point, I believe there is an issue over the medical payment coverage and whether the various insurance policies Miss Donham had with your company will stack under Missouri law. Please get the insurance policies to me immediately.

Once Ms. Brown's attorney raised the issue of other applicable coverage, there was simply no way to know what amount was demanded for settlement. This defect is acknowledged by implication in the letter when Ms. Brown's attorney indicated he was not in a position to discuss the $95,000 offer.[4]

Ms. Brown argues that two documents cure any such defect. She claims that her March 16, 1992 letter clarifies her demand for $100,000, by stating: "There can be no question that Theresa Brown's claim far exceeds the quoted limits of $100,000 per person under Miss Donham's coverage." While this statement obviously refers to a "quoted limits of $100,000 per person", it does not limit Ms. Brown's demand to that amount. It is also subject to the ambiguity later introduced by Ms. Brown's April 21, 1992, letter concerning medical payment coverage and stacking.

Ms. Brown also claims that her October 8, 1993 Amended Petition for Damages clarifies her demand for $100,000. This argument fails for a number of reasons. First, the Amended Petition was not filed until more than a year after the settlement period had expired. Second, it alleges that a demand for payment of $100,000 was made, when the actual demand letter referred only to "policy limits of all insurance coverages". Finally, the allegation specifically states that "[no] settlement was reached during said 60 day period" so that the Amended Petition itself cannot be construed as a new demand or a clarification of an open demand.

**C.**

The purpose of § 408.040.2 is to encourage settlement. Settlement can only occur by the unequivocal acceptance of a definite offer or demand, resulting in an enforceable contract. From the documents that constitute the record below, it cannot be determined what Ms. Brown was demanding as "policy limits of all insurance coverages" or what she would have accepted in settlement of her claim during the sixty-day time limit alleged in her amended petition.

This case reveals the tension between making a § 408.040.2 demand at the earliest time possible to start the clock running on interest and the need to obtain enough information to determine the proper amount to demand for settlement. It is understandable that Ms. Brown's attorney did not want to limit the settlement demand if additional coverage might be available. Yet, by attempting to preserve this flexibility, Ms. Brown was precluded from making a "readily ascertainable" settlement demand that could support the imposition of interest pursuant to § 408.040.2.

**IV.**

The judgment of the circuit court is reversed as to its award of § 408.040.2 prejudgment interest. In all other respects, the judgment of the circuit court is affirmed.

All concur.

---

4. Defendant, alternatively, has asserted that plaintiff's policy limits demand was met by the $95,000 offer. To our knowledge, the actual policy limits and coverages available have not been finally litigated. Additionally, § 408.040.2 is not limited to demands within coverage.