# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2764

_____

Dustin Brazil, individually; J.B., a minor, by next friend Dustin Brazil; Connie
Weyer

*Plaintiffs - Appellees*

v.

Auto-Owners Insurance Company, (Mutual)

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: April 16, 2021
Filed: July 2, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After an auto accident that killed Jessica and Malachi Brazil and injured J.B.,
Auto-Owners Insurance Company agreed to cover a maximum of $1 million total in
losses for Jessica, Malachi, and J.B.  Jessica's husband, who is also Malachi's and
J.B.'s father, and Jessica's mother ("Plaintiffs") filed a declaratory-judgment suit
against Auto-Owners alleging that they were entitled to more under the Auto-

Owners' Policy ("Policy"). Both sides filed motions for summary judgment. The district court granted in part and denied in part each motion for summary judgment, disposing of all claims. Auto-Owners appeals, arguing that the district court erroneously interpreted the Policy to provide $3 million in total coverage. We agree and therefore reverse, vacate the judgment, and remand for entry of judgment consistent with this opinion.

## I.

In March 2018, Jessica Brazil was driving a vehicle in Camden County, Missouri with her two children, Malachi Brazil and J.B., as passengers. Another vehicle, driven by Amber Metcalf, crossed the center lane and struck Jessica's vehicle head on, killing Metcalf, Jessica, and Malachi, and injuring J.B. Metcalf was an uninsured motorist.

The vehicle Jessica was driving at the time of the accident was covered by the Policy. Jessica, Malachi, and J.B. were occupancy insureds under the Policy, and the accident was covered by the Policy's uninsured-motorist section. When Jessica's family requested that Auto-Owners cover Jessica's, Malachi's, and J.B.'s injuries, Auto-Owners agreed to pay uninsured-motorist coverage only in the total amount of $1 million.

Believing that this amount was less than provided for under the Policy's terms, Plaintiffs filed a declaratory-judgment suit against Auto-Owners in Missouri state court alleging that Auto-Owners owed more than $1 million. Auto-Owners removed the case to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). The parties both moved for summary judgment. The district court granted in part and denied in part each motion and entered a declaratory judgment that the Policy:

> is ambiguous as to whether the "each person" or "each occurrence" limit applies to uninsured motorist coverage, and therefore the Policy must be construed as providing up to $1 million in coverage for the

death of Jessica Brazil, up to $1 million in coverage for the death of Malachi Brazil, and up to $1 million in coverage for bodily injuries to J.B[.]

Auto-Owners appeals, arguing that under the Policy, it is liable at most for $1 million total for Jessica, Malachi, and J.B.

## II.

Under Missouri law, which the parties agree governs this diversity case, the interpretation of an insurance policy is a question of law, which we review *de novo*. *Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 549 (8th Cir. 2003).

"Missouri courts apply general contract-interpretation principles" to the interpretation of insurance policies. *Gohagan v. Cincinnati Ins.*, 809 F.3d 1012, 1015 (8th Cir. 2016). "In interpreting an insurance contract, we are to read the contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written." *Stotts v. Progressive Classic Ins.*, 118 S.W.3d 655, 662 (Mo. Ct. App. 2003); *see also Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 395 (Mo. 2001) (per curiam) (applying this rule to contracts generally). "A construction which attributes a reasonable meaning to all the provisions of [an] agreement is preferred to one which leaves some of the provisions without function or sense." *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 718 (Mo. Ct. App. 1995); *see also Gohagan*, 809 F.3d at 1015 (applying this rule to an insurance policy under Missouri law); *Miller v. O'Brien*, 168 S.W.3d 109, 116 (Mo. Ct. App. 2005) (applying the rule that a court will give "every clause some meaning if it is reasonably able to do so" to an insurance policy). Where policy language is unambiguous, Missouri courts will enforce the policy as written absent a statute or public policy requiring coverage. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991). Ambiguity exists when a policy is "reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010).

In general, courts applying Missouri law must "resolve[] ambiguities in favor of the insured." *Seeck v. Geico Gen. Ins.*, 212 S.W.3d 129, 132 (Mo. 2007). But insureds are entitled only "to a resolution of [an] ambiguity consistent with their *objective* and *reasonable* expectations as to what coverage would be provided." *Burns*, 303 S.W.3d at 512; *see also Mendota Ins. v. Ware*, 348 S.W.3d 68, 74 (Mo. Ct. App. 2011) (declining to read an insurance policy to impose no liability limits despite an alleged ambiguity because this was inconsistent with the "*objective* and *reasonable* expectations as to what coverage would be provided"); *Estrin Constr. Co. v. Aetna Cas. & Sur. Co.*, 612 S.W.2d 413, 420 (Mo. Ct. App. 1981) ("[N]ot every ambiguity in an insurance policy is resolved favorably to the insured, but only where a reasonable person in the position of the adherent would have expected coverage.").

The Policy's Declarations state that the Policy's Uninsured Motorist limits are "$1,000,000 each person / $1,000,000 each occurrence." The "Uninsured Motorist Coverage" section of the Policy defines coverage and limits of insurance as follows:

> **2.** COVERAGE
>
> > **a.** **We** will pay compensatory damages, . . . that any person is legally entitled to recover from the owner or operator of an **uninsured auto** for **bodily injury** sustained while **occupying** an **auto** that is covered by **SECTION II – LIABILITY COVERAGE** of the policy.
>
> > [. . .]
>
> **4.** LIMIT OF INSURANCE
>
> > **We** will pay compensatory damages, . . . for **bodily injury** up to the Limit of Insurance shown in the Declarations for Uninsured Motorist Coverage as follows:
>
> > **a.** The limit shown for "each person" is the amount of coverage and the most we will pay, subject to **4.b.** below,

> for all compensatory damages, . . . because of or arising out of **bodily injury** to one person in any one **occurrence**.

> **b.** The limit shown for "each occurrence" is the total amount of coverage and the most **we** will pay, subject to **4.a.** above, for all compensatory damages, . . . because of or arising out of **bodily injury** to two or more persons in any one **occurrence**.

Auto-Owners argues that the district court erred by finding that this language is ambiguous, enforcing only the "each person" limitation, and consequently holding that, because there were three people injured in the crash, the insurance limit in this case was $3 million. Auto-Owners claims that this erroneously reads the "each occurrence" limitation out of the contract entirely. Plaintiffs counter that Auto-Owners' proposed interpretation cannot be correct because it creates superfluity. Plaintiffs also argue that the district court correctly held that the insurance limit was $3 million because the Policy is ambiguous for multiple reasons. According to the Plaintiffs, because the Policy is ambiguous, it should be interpreted in favor of the insureds as providing $3 million in coverage.

Auto-Owners is correct. Section 4.a provides a limit if "bodily injury" happens to "one person in any one occurrence." *See Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. 1995) (interpreting a similar provision). That person may recover, at "most," $1 million. Section 4.a states that it is "subject to" section 4.b, meaning that it may "be overridden by" the limit in section 4.b. *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 616, 852 (3d ed. 2011). Section 4.b provides a second limit that applies to incidents causing "bodily injury to two or more persons in any one occurrence." Those persons together may recover, at "most," $1 million total. *See Brown*, 900 S.W.2d at 633 (interpreting how provisions similar to 4.a and 4.b work together to provide two limits that both apply to a claim). Section 4.b is also "subject to" section 4.a, meaning that it may "be overridden by" the limit in section 4.a. Here, because three persons—Jessica, Malachi, and J.B.—suffered injuries, the limits in sections 4.a and 4.b both apply. Each person in the crash is limited by section 4.a to a recovery of, at most, $1 million. And because the crash resulted in

-5-

injuries to two or more people, their combined recovery is also limited by section 4.b to, at most, $1 million total. *See id.*

Plaintiffs argue that this interpretation is incorrect because it renders 4.b's "subject to" language and the entirety of 4.a superfluous, and because 4.a and 4.b could have been written as one provision instead of two. These arguments are unavailing. The canon against surplusage does not require courts to read a contract in a way that contains no surplusage. *See Miller*, 168 S.W.3d at 116 (noting that a court should give "every clause some meaning if it is reasonably able to do so"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176-77 (2012) (noting that the canon against surplusage is not always "dispositive because . . . [s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach"). It merely counsels courts presented with two reasonable interpretations—one that contains surplusage and one that does not—to choose the one without. *See Ringstreet*, 890 S.W.2d at 718.

Here, there is no reasonable interpretation of the Policy that avoids surplusage. Plaintiffs are correct that the Policy contains surplusage because there is no need for it to clarify that 4.b is "subject to" 4.a when there is no instance in which a person could recover more under the 4.b "each occurrence" limit than the 4.a "each person" limit. That is, the Policy's effect would be the same if the "subject to" language in 4.b was omitted. But Plaintiffs' proposed alternative is unreasonable, as it requires us to write out the "each occurrence" limit entirely.[1] This results in more surplusage, not less, and it materially changes the parties' bargain. By contrast, Auto-Owners' reading does no violence to the Policy's language. Because 4.a and 4.b specify at "most" how much an insured may recover, those sections are properly read as limitations to coverage, not promises to provide a certain amount of coverage.

---

[1]Plaintiffs' reading also results in the same "subject to" surplusage that Plaintiffs claim to be trying to avoid. If we use Plaintiffs' reading, we create that surplusage in both 4.a and 4.b, not just in 4.b.

Section 4.a applies when only one person is injured in one occurrence, and both 4.a and 4.b apply when two or more persons are injured in one occurrence. Thus, Auto-Owners' reading does not render section 4.a superfluous. Finally, Plaintiffs' argument that 4.a and 4.b could have been written as one provision also fails to show surplusage because, as we have discussed, both 4.a and 4.b are doing some work. Certainly, the Policy could have been written more succinctly, but that is not our query here. Because Plaintiffs' reading results in more surplusage than Auto-Owners' reading, and because Auto-Owners' reading is the only one that applies both limitations, Plaintiffs' surplusage argument fails. *Cf. Barton v. Barr*, 590 U.S. ---, 140 S. Ct. 1442, 1453 (2020) (holding that redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to the text).

Next, we address Plaintiffs' ambiguity argument. Plaintiffs claim that the Policy is ambiguous because "subject to" has several dictionary definitions— "affected by or possibly affected by," "dependent on something else to happen or be true," and "contingent." Plaintiffs also argue that the Policy is ambiguous because the "subject to" language in both 4.a and 4.b makes those provisions circular and conflicting. Plaintiffs are correct that, when there is an ambiguity in the policy, Missouri law generally requires us to adopt the interpretation more favorable to the insured. *See Seeck*, 212 S.W.3d at 132. But an ambiguity only exists when there are two or more reasonable interpretations of a policy. *Id.* Despite Plaintiffs' claim that "subject to" can have multiple meanings, they have not demonstrated an ambiguity in the Policy because they have not pointed to a second reasonable interpretation of the language in sections 4.a and 4.b. Plaintiffs' only proffered reading is not reasonable because it results in an interpretation that causes the "each occurrence" limit—for which the parties bargained—never to apply. *Cf. Mendota*, 348 S.W.3d at 74 (declining to read an insurance policy to impose no liability limits despite an alleged ambiguity because this was inconsistent with the "*objective* and *reasonable* expectations as to what coverage would be provided" (internal quotation marks and brackets omitted)). Additionally, the "subject to" language does not make 4.a and 4.b circular and conflicting because 4.a and 4.b are written as two limits to

coverage, which can both apply to the same claim, not two promises of coverage, which could not. Thus, both 4.a and 4.b can apply to a single claim without conflicting with each other. Because there is only one reasonable interpretation of the Policy and because 4.a and 4.b do not conflict with each other, the Policy is not ambiguous.

Plaintiffs' cited cases, *Jones v. Mid-Century Insurance*, 287 S.W.3d 687 (Mo. 2009), and *Ritchie v. Allied Property & Casualty Insurance*, 307 S.W.3d 132 (Mo. 2009), are inapposite. Both cases addressed underinsured motorist policies that prevented the insured from ever recovering the full amount of the policy limits. *See Jones*, 287 S.W.3d at 690-92; *Ritchie*, 307 S.W.3d at 139-41. The insurance companies in those cases argued that they had to pay only the policy limit minus the amount the underinsured's insurance paid. *Jones*, 287 S.W.3d at 689; *Ritchie*, 307 S.W.3d at 136. Thus, the insurance companies' interpretations of the policies made them misleading because their limits could never be paid in full. *Jones*, 287 S.W.3d at 691; *Ritchie*, 307 S.W.3d at 140. In such cases, the Missouri Supreme Court has held that the insurance company must pay *damages* minus the amount the underinsured's insurance paid, up to the full amount of the policy. *Jones*, 287 S.W.3d at 692-93; *Ritchie*, 307 S.W.3d at 141. Because this is not a case in which the Policy will never provide its stated coverage limits, *Jones* and *Ritchie* do not apply.

## III.

Therefore, we reverse the district court, vacate the judgment, and remand for an entry of judgment consistent with this opinion.

_____