# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1043

_____

BITCO General Insurance Corporation

*Plaintiff - Appellee*

v.

Bruce Smith; Clayton Hamlin; Chris White, d/b/a Chris White Construction

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: September 21, 2023
Filed: December 26, 2023

_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

The question in this appeal is whether an insurance policy issued by BITCO General Insurance Corporation ("BITCO") covers damages from an accident involving a truck driven by a contractor engaged by the insured, KAT Excavation Company ("KAT"). The district court[1] concluded BITCO had no such obligation

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

under the policy because "KAT did not hire" the contractor's dump truck for purposes of the policy. We affirm.

## I. Background

KAT was the general contractor on a construction project at Skyhaven Airport, which included work on the airport's runway. KAT arranged for E&S Quarry ("E&S") to supply rock for paving the runway. KAT's own fleet of drivers and vehicles could not transport enough rock from E&S to the airport, so KAT engaged other hauling companies willing to furnish trucks with drivers. KAT's "truck boss" in charge of arranging for extra trucks, Mike Long, telephoned Chris White, doing business as Chris White Construction ("CWC"), who KAT had worked with before on another construction project. Long spoke with Chris White's son, Tanner White, asking him if CWC had any available dump trucks. Long specified that the vehicle needed to be a dump truck, but otherwise any dump truck would do.

Tanner told Long he had a dump truck that could haul rock from E&S to the airport. Under their oral agreement, KAT would pay CWC a fixed amount for each ton of rock CWC hauled to the airport, irrespective of how many hours the driver spent hauling rock or how many miles were driven. Tanner did not specify, nor did Long ask, who would be driving the truck. Long gave the location of E&S and the airport, telling Tanner that E&S opened at 7:00 a.m. As Tanner and Long understood, CWC's truck would work a full day, if possible, hauling as much rock as it could or until KAT met its rock requirements for the day. Long made similar arrangements with several other companies during the life of the project. Tanner contacted Clayton Hamlin, a driver CWC used in the past, and asked him to drive the dump truck the next day. Hamlin agreed.

The following day, Hamlin picked up the vehicle—a 1988 Peterbilt dump truck—from Tanner. Hamlin drove the truck to E&S and picked up a load of rock. E&S gave him a ticket to show KAT how many tons of rock Hamlin transported. Hamlin took the load of rock to the airport, where KAT workers directed Hamlin

where to dump it. Hamlin then drove back to E&S. After Hamlin picked up another load of rock and on his second trip to the airport, an accident occurred between Hamlin and a vehicle driven by Bruce Smith.

Smith sued Hamlin in Missouri state court for injuries stemming from the accident.[2] KAT's insurer, BITCO, then filed a declaratory judgment action in federal court, denying it had any responsibility to defend or indemnify CWC or Hamlin under KAT's insurance policy.

CWC and Hamlin counterclaimed against BITCO for coverage, arguing the policy's omnibus clause covered Hamlin as the driver of the dump truck. Smith joined CWC and Hamlin (collectively, "the Appellants") in demanding BITCO defend and indemnify Hamlin and CWC. The relevant omnibus clause defines an "insured" as "[a]nyone else while using with [KAT's] permission a covered 'auto' [KAT] own[s], hire[s], or borrow[s.]" The omnibus provision also provides coverage for "[a]nyone liable for the conduct of an 'insured[.]'" According to Appellants, if Hamlin is a covered insured, then BITCO also has an obligation to defend CWC as a party that could be "liable" for Hamlin's conduct.

The parties filed competing motions for summary judgment over the scope of coverage. Appellants argued the undefined terms "permission" and "hire" were ambiguous, which meant Missouri law required adopting a coverage-favoring definition of those words. The district court disagreed, holding that the term "hire"—as used in the insurance policy—required KAT to exercise an element of "control" over the dump truck. The district court granted summary judgment to BITCO, deciding that the undisputed facts did not show, as a matter of law, that KAT exercised the requisite level of "control" over the dump truck, and thus Hamlin was not covered under the policy. Appellants appealed, arguing the district court improperly interpreted the insurance contract under Missouri law and that,

_____

[2]Smith did not name CWC as a party in his initial state court petition, but he intends to name CWC as an additional defendant once a stay is lifted in that case.

-3-

regardless of whether "hire" requires an element of "control," the undisputed facts show KAT "hired" the dump truck.

## II.  Analysis

We review a grant of summary judgment on an insurance policy interpretation de novo, applying the same summary judgment standard as the district court and using state law to determine coverage issues. *Wintermute v. Kan. Bankers Sur. Co.*, 630 F.3d 1063, 1067 (8th Cir. 2011). *See also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "Under Missouri law, which the parties agree governs this diversity case, the interpretation of an insurance policy is a question of law, which we review *de novo*." *Brazil v. Auto-Owners Ins. Co.*, 3 F.4th 1040, 1042 (8th Cir. 2021).

Appellants argue the terms "hire" and "permission" are ambiguous, and because of that ambiguity, Missouri law requires us to adopt a coverage-friendly definition.  To answer whether those terms are ambiguous, Missouri law mandates we use general contract-interpretation principles to interpret the meaning of terms in the insurance policy.  *Id.*  "In interpreting an insurance contract, we are to read the contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written." *Id.*  (quoting *Stotts v. Progressive Classic Ins.*, 118 S.W.3d 655, 662 (Mo. Ct. App. 2003)).

Generally, courts should interpret an insurance policy according to the policy's plain meaning, enforcing unambiguous language as written.  *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 554 (Mo. 2014).  "An ambiguity exists only when a phrase is 'reasonably open to different constructions[,]'" *id.* (quoting *Mendenhall v. Prop. & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. 2012)), or when "there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy," *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. 2015).  Courts construe ambiguities in favor of the insured, *Seeck v. Geico Gen. Ins.*, 212 S.W.3d 129, 132 (Mo. 2007), but only when a reasonable person would expect coverage

under the policy terms, *Brazil*, 3 F.4th at 1042 (citing *Estrin Constr. Co. v. Aetna Cas. & Sur. Co.*, 612 S.W.2d 413, 420 (Mo. Ct. App. 1981)). Simply because an insured may point to a coverage-friendly definition in a dictionary does not mean that interpretation controls; any interpretation must be objectively reasonable in light of the whole agreement and the parties' intent. *See id.* at 1044–45 (rejecting the plaintiffs' argument that "subject to" was ambiguous because "they have not pointed to a second reasonable interpretation of the language").

The district court held that the term "hire" in the insurance policy necessarily requires an element of "control." *BITCO Gen. Ins. Corp. v. Smith*, 646 F. Supp. 3d 1039, 1044 (W.D. Mo. 2022) (citing cases). In other words, there must be more than a mere engagement of transportation services: "[F]or a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control." *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483, 487 (5th Cir. 1996) (alteration in original) (quoting *Sprow v. Hartford Ins. Co.*, 594 F.2d 418, 422 (5th Cir. 1979)). According to the district court, "a definition of 'hiring' that does not include an element of control makes the term overly broad and unreasonable." *BITCO Gen. Ins.*, 646 F. Supp. 3d at 1044. Because of its holding, the district court explicitly declined to address whether KAT gave permission to Hamlin to drive the truck. *Id.* at 1045 n.7.

In asking us to reverse the district court, Appellants argue we should hold "hire" to be ambiguous because the term is subject to more than one reasonable interpretation, including a definition that does not require an element of control, and Missouri law requires adopting a coverage-friendly definition against the drafter when policy language is ambiguous. *See, e.g.*, *Burns v. Smith*, 303 S.W.3d 505, 509–10 (Mo. 2010). After all, omnibus clauses are meant to extend, not restrict, coverage for the insureds, *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 479 (Mo. 2018), and our circuit has already concluded "that the term 'hired auto' is ambiguous," *Kresse v. Home Ins. Co.*, 765 F.2d 753, 755 (8th Cir. 1985) (interpreting North Dakota law). Also, at least one other jurisdiction has declined to add an element of control to the common definition of "hire." *See Pawtucket Mut.*

*Ins. Co. v. Hartford Ins. Co.*, 787 A.2d 870, 873 (N.H. 2001). Thus, Appellants argue, we should apply a common dictionary definition of "hire" that does not require an element of control. We disagree.

Missouri law forbids us from reading any one policy term in isolation to create an ambiguity. *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017). Instead, we must determine how the language fits in the context of the policy. *Sanders v. Wallace*, 884 S.W.2d 300, 303 (Mo. Ct. App. 1994). Read in isolation, the term "hire" may well be ambiguous. *See Kresse*, 765 F.2d at 755. But any ambiguity is extinguished by looking to the term "permission" within the same omnibus clause—a term that has no ambiguity. *Winterton v. Van Zandt*, 351 S.W.2d 696, 700 (Mo. 1961). ("There is no ambiguity in the meaning of the word 'permission'."). "Permission" means "[a]ct of permitting; formal consent; authorization; leave; license or liberty granted." *Id.* (quoting *Permission*, Webster's New International Dictionary (2nd ed.)).

Though "permission" as used in the omnibus clause may have a "flexible meaning," *McKee v. Travelers Ins. Co.*, 315 S.W.2d 852, 857 (Mo. Ct. App. 1958), being express or implied depending on the facts and circumstances of the case, *see Hawkeye-Sec. Ins. Co. v. Bunch*, 643 F.3d 646, 650 (8th Cir. 2011), that does not render the term ambiguous. "[Permission] carries with it the necessary aspect of the right, power, or privilege to give or to withhold the grant of license embodied in the term." *Allstate Ins. Co. v. Hartford Acc. & Indem. Co.*, 311 S.W.2d 41, 45 (Mo. Ct. App. 1958). If one is able to give permission, then one has the power to give or prevent leave, license, or authority to use. *M.F.A. Mut. Ins. Co. v. Alexander*, 361 S.W.2d 171, 179 (Mo. Ct. App. 1962).

In reading all the words of BITCO's omnibus clause together in context, we conclude that "hire" unambiguously requires an element of control because the giving or withholding of "permission" unambiguously requires control. Any other interpretation of "hire" would be unreasonable in context with the way "permission" is used in the omnibus clause. Thus, we agree with the district court that the policy

requires KAT to exercise an element of control over the truck. *See BITCO Gen. Ins.*, 646 F. Supp. 3d at 1044.

We now consider whether the undisputed facts—construed in the light most favorable to Appellants—could support a jury finding that KAT "hired" CWC's dump truck. Whether a named insured exercises "control," such that a vehicle becomes a "hired auto" will depend on the facts and circumstances of the case. *See Kresse*, 765 F.2d at 755–56. Looking to the facts here, we conclude that KAT did not "hire" CWC's dump truck but merely engaged the truck for transportation services. As the district court reasoned:

> KAT could not drive or operate the truck, or dictate the truck's route, speed, or any other aspect of its operation (other than specifying the rock was to be picked up at E&S and was to be unloaded at a specific spot at the Airport). KAT did not select the truck CWC supplied, did not select Hamlin to be the driver, and had no right to reject either. It had no responsibility to pay Hamlin or any expenses related to the truck's operation or maintenance.

*BITCO Gen. Ins.*, 646 F. Supp. 3d at 1045 (footnote omitted). Significantly—given the policy language that KAT give "permission" to the user of the truck—the facts show Hamlin received permission to drive the truck from Tanner, not KAT. The service contract merely called for CWC to move as much rock as KAT needed, with KAT paying on a per-ton basis. Though KAT desired the trucks to work a full day if possible and to keep hauling rocks until KAT told them to stop, Hamlin and CWC had the discretion to decide the route to take, the number of trips or stops to make, and the hours worked.

Thus, the record reflects that CWC exercised exclusive control over the dump truck. As the district court summarized: "KAT hired CWC to perform a task, and in performing that task CWC used a truck. KAT did not hire the truck." *Id.* Because the undisputed facts show Hamlin was not a covered insured under the omnibus

clause, the policy does not provide coverage for either Hamlin or CWC for accidents involving the dump truck.

## III. Conclusion

We affirm the district court's grant of summary judgment to BITCO and its denial of summary judgment to Appellants.

COLLOTON, Circuit Judge, concurring in the judgment.

I concur in the judgment based on the court's conclusion that truck driver Hamlin received "permission" to drive the dump truck at issue from Tanner White of Chris White Construction, not from KAT Excavation, Inc. *Ante*, at 7 ("Significantly—given the policy language that KAT give 'permission' to the user of the truck—the facts show Hamlin received permission to drive the truck from Tanner, not KAT."). Hamlin was therefore not an "insured" under the policy because he was not using the truck with KAT's "permission." That conclusion is sufficient to affirm the judgment, and it is unnecessary to address whether KAT "hired" the dump truck.

––––––––––––––––––––––––––