# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2454
_____

Priscilla Croxdale; Ralph Croxdale

*Plaintiffs - Appellants*

v.

Travelers Home and Marine Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: March 17, 2026
Filed: June 24, 2026

_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The district court[1] granted summary judgment to Travelers Home and Marine Insurance Company ("Travelers") because water damage to Priscilla and Ralph

---

[1]The Honorable Rebecca G. Ebinger, United States District Judge for the Southern District of Iowa.

Croxdale's home was unambiguously outside the coverage of their policy. We affirm.

## I. Background

The Croxdales purchased an insurance policy ("the policy") from Travelers to cover their Iowa home. A generic version of the policy insured against direct physical loss but excluded coverage "for loss . . . [c]aused by . . . [c]onstant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more."[2] The Croxdales' policy contained an Iowa-specific endorsement that amended the generic version by replacing "14 days or more" with "weeks, months, or years."

In late November 2021, the Croxdales left their home to live with their daughter in another state. On February 12, 2022, a neighbor contacted them to report signs of a leak at their Iowa home. The Croxdales promptly shut off the water to their home and reported the leak to Travelers. Inspection of the home showed that a pipe had burst, resulting in a significant leak that rendered the home uninhabitable. Travelers determined that this leak had lasted for about one month—a finding that the Croxdales concede on appeal—and denied coverage. The Croxdales sued, alleging a breach of contract and a bad-faith denial of coverage.

The Croxdales and Travelers both moved for summary judgment, disputing the correct interpretation of the policy. The district court determined that the policy does not cover any loss caused by a leak that lasted more than fourteen days—that is, for "weeks"—even if the loss occurred in fewer than fourteen days or if it could

---

[2]The parties dispute whether this clause is a coverage "exclusion" or a "limitation." But the Croxdales have not identified any significance this distinction would have under Iowa law. The plain language of the clause describes a loss that Travelers does not insure against. We do not see why it matters whether the clause is described as a limitation or an exclusion. For simplicity, we refer to the clause as an exclusion.

be divided into losses that occurred before fourteen days had passed and those that had not. Because the leak lasted longer than fourteen days, the district court granted Travelers' motion for summary judgment on the Croxdales' breach of contract claim. Having concluded that the policy did not provide coverage, the district court also granted Travelers summary judgment on the claim for bad-faith denial. The Croxdales appeal, arguing (1) that the policy covers the entire damage from the leak, (2) that, in the alternative, the policy at least provides coverage for damage that occurred within the first thirteen days of the leak, and, (3) that, either way, Travelers' denial of coverage was in bad faith.

## II. Discussion

"We review a grant of summary judgment on an insurance policy interpretation de novo, applying the same summary judgment standard as the district court and using state law to determine coverage issues." *First Baptist Church v. Zurich Am. Ins. Co.*, 129 F.4th 488, 491 (8th Cir. 2025). "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* The parties agree that Iowa law governs. Iowa courts generally interpret and construe insurance policies according to the plain meaning of their language. *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501 (Iowa 2013). Further, they "interpret a policy from the viewpoint of an ordinary person, not a specialist or expert," and "interpret ambiguous policy provisions in favor of the insured." *Grinnell Mut. Reinsurance Co. v. Jungling*, 654 N.W.2d 530, 536 (Iowa 2002). "[A] policy is ambiguous if the language is susceptible to two *reasonable* interpretations." *Boelman*, 826 N.W.2d at 501. However, they "will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Id.* The parties do not identify any Iowa court decision addressing a policy with the language at issue here.

We begin with the Croxdales' claim for breach of contract. We agree with the district court that the policy's plain language excludes all losses caused by a leak

-3-

that lasts more than fourteen days, even losses caused before fourteen days have passed. The policy excludes coverage for losses that were caused by a leak "that occurs over a period of weeks, months, or years." If a leak occurs over more than fourteen days, it has necessarily occurred "over a period of weeks," and is therefore not covered. The leak here lasted for about one month, so the losses it caused are entirely outside the policy's coverage.

The Croxdales' primary argument is that the policy covers the entirety of the water damage. In support, they offer three key points, which we address in turn. First, the Croxdales argue that the policy only excludes losses "that occur[red] over a period of weeks," and thus, even if the leak itself lasted several weeks, the loss caused by the sudden burst of a pipe would be covered. However, the word "that" introduces a descriptive phrase that modifies the sources of water damage, not the term "loss." Specifically, the word "that" immediately follows the words "seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor," not the word "loss." *See McKain v. Safeco Ins. Co. of America*, 623 F.Supp.3d 1117, 1122 (D. Mont. 2022) ("[T]he long-term leak exclusion identifies a peril—the continuous or repeated seepage or leakage of water or steam which occurs over a period of weeks, months, or years—that excludes any resultant loss from coverage."). This language is clear and unambiguous. Thus, we reject the Croxdales' argument that the policy is ambiguous and should therefore be interpreted in their favor. *See Jungling*, 654 N.W.2d at 536.

Next, the Croxdales argue that the exclusion does not apply after fourteen days but after some longer unspecified period. They argue that if the phrase "weeks, months, or years" means any period greater than two weeks, then the words "months" and "years" would have no importance; any leak that lasts "months" or "years" will necessarily last for "weeks." The Croxdales argue that we should avoid a construction that makes any part of a contract superfluous or without meaning. *See U.S. Bank, Nat'l Ass'n. v. Bittner*, 986 N.W.2d 840, 848 (Iowa 2023). But "the rule against superfluous language is not the be-all and end-all." *Id.* at 850 (citation modified). In *Bittner*, the Iowa Supreme Court positively cited our decision in *Brazil*

-4-

*v. Auto-Owners Ins. Co.*, 3 F.4th 1040 (8th Cir. 2021), where we held that when we cannot reasonably interpret an insurance policy to eliminate surplusage, we should give this canon less weight. *Id*. at 1043-44; *Bittner*, 986 N.W.2d at 850. Here, there is no way to construe the exclusion without rendering some term surplusage, and only the "weeks" construction avoids contradicting a term. For example, if we read the exclusion to apply to leaks occurring over a period of at least two months, then the term "years" would be superfluous, and we would contradict the term "weeks." We thus believe Iowa courts would apply the exclusion to any leak lasting at least "weeks," which may render "months" and "years" surplusage but avoids contradicting an express term in the policy.

Third, the Croxdales argue that the Iowa endorsement must offer more coverage than the generic provision it replaced. Because the generic provision originally excluded coverage for leaks lasting longer than fourteen days, the Croxdales conclude that "weeks, months, or years" must refer to a period that is longer than fourteen days. The only authority that the Croxdales cite for their purported rule is the canon against surplusage, reasoning that if the endorsement did not expand coverage, it would be surplusage. We disagree. First, the Croxdales do not cite any authority applying the canon against surplusage in this way. Second, even if we concluded the Iowa-specific language has a different meaning than the generic language, there is no reason to think that an amendment must always expand coverage rather than reduce coverage. Here, the language is neither broader nor narrower, merely different. Because we see no reason to ignore the plain language of the policy, we reject the Croxdales' contention that their entire loss was covered.

We next address the Croxdales' alternative argument that, at minimum, the policy provides partial coverage for the loss. They argue that the policy covers any losses that occur within the first thirteen days of a leak, either because this is the best reading of the policy language or because the policy is at least ambiguous. But the Croxdales fail to reconcile this argument with the plain language of the policy, specifically the phrase "that occurs over a period of weeks, months, or years." They ignore that the words "that occurs" modify the sources of damage and not loss. The

Croxdales also rely on two cases from outside our circuit applying the law of other states: *Wheeler v. Allstate Ins. Co.*, 687 F. App'x 757 (10th Cir. 2017) (unpublished), and *Hicks v. Am. Integrity Ins. Co. of Fla.*, 241 So.3d 925 (Fla. Dist. Ct. App. 2018). In *Wheeler*, the Tenth Circuit found that a substantially similar policy did not exclude damage caused by less than fourteen days of leaking water. 87 F. App'x at 769. However, we find the *Wheeler* dissent's interpretation of the policy more persuasive for the reasons we set forth above. *Id.* at 777 (Moritz, J., dissenting) ("[B]ecause Wheeler seeks coverage for property loss caused by a leak that unquestionably occurred '*over a period*' of two weeks or more, I would hold that Exclusion 3 unambiguously applies to *all* of the damage the leak caused."). *Hicks* involved different policy language and does not have persuasive value. 241 So.3d at 926 (describing policy language without the phrase "that occurs"). Therefore, we conclude that the policy does not provide partial coverage for the loss.

Finally, we address the Croxdales' claim for bad-faith denial of coverage. In Iowa, an insured may establish a claim for bad-faith denial of coverage if the insurer (1) lacked a reasonable basis for denying benefits of the policy and (2) knew of or recklessly disregarded that absence of a reasonable basis for denial. *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). "The first element is an objective one; the second element is subjective." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). As the Croxdales conceded at oral argument, they cannot prevail on their claim for bad-faith denial if the policy does not provide coverage. Accordingly, the district court properly granted summary judgment to Travelers on the claim.

## III. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment to Travelers.

_____